**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE | : NO. 5:16-cv-04276-EGS |
| INDEMNITY COMPANY; ALLSTATE PROPERTY & | : |
| CASUALTY INSURANCE COMPANY; ALLSTATE | : |
| VEHICLE & PROPERTY INSURANCE COMPANY | : |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| ELECTROLUX HOME PRODUCTS, INC. | : |

**DEFENDANT, ELECTROLUX HOME PRODUCTS, INC.'S**
**<u>PROPOSED JURY INSTRUCTIONS</u>**

Defendant, Electrolux Home Products, Inc. ("Electrolux"), by and through its counsel, Nicolson Law Group LLC, respectfully submits the following Jury Instructions. Electrolux reserves the right to modify these instructions in order to conform to the evidence presented at trial.

**<u>Proposed Jury Instruction No. 1 – General Rule of Strict Liability</u>**

<u>Allstate</u> claims that <u>they provided insurance coverage to property owners ("Allstate's subrogors") who suffered property damage as a result of fires caused by the ignition of accumulated lint in clothes dryers (hereinafter the "subject dryers")</u>], which <u>were</u> manufactured and distributed by <u>Electrolux</u>.

To recover for this harm, <u>Allstate</u> must prove by a fair preponderance of the evidence each of the following elements:

(1) <u>Electrolux</u> is in the business of <u>distributing, manufacturing and selling</u> such a product;

(2) The product in question had a defect that made it unreasonably dangerous;

(3) The product's unreasonably dangerous condition existed at the time the product left the defendant's control;

(4) The product was expected to and did in fact reach <u>Allstate's subrogors</u>, and was thereafter used at the time of the <u>subject fires</u>, without substantial change in its condition; and

(5) The unreasonably dangerous condition of the product was a substantial factor in causing harm to <u>Allstate's subrogors</u>.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.10*

**Proposed Jury Instruction No. 2 – Strict Liability – Design Defect – Determination of Defect**

***Finding of Defect Requires "Unreasonably Dangerous" Condition***

Allstate claims that the subject dryers were defective and that the defect caused Allstate's subrogors harm. Allstate must prove that the product contained a defect that made the product unreasonably dangerous.

Allstate's evidence must convince you both that the product was defective and that the defect made the product unreasonably dangerous.

In considering whether a product is unreasonably dangerous, you must consider the overall safety of the product for all [intended] [reasonably foreseeable] uses. You may not conclude that the product is unreasonably dangerous only because a different design might have reduced or prevented the harm suffered by Allstate in this particular incident. Rather, you must consider whether any alternative proposed by Allstate would have introduced into the product other dangers or disadvantages of equal or greater magnitude.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.20(1)*

**Proposed Jury Instruction No. 3 – Strict Liability – Design Defect – Determination of Defect**

***Consumer Expectations***

Allstate claims that they were harmed by a product that was defective in that it was unreasonably dangerous under the consumer expectations test.

Under the consumer expectations test, a product is unreasonably dangerous if you find that the product is dangerous to an extent beyond what would be contemplated by the ordinary consumer who purchases the product, taking into account that ordinary consumer's knowledge of the product and its characteristics.

Under the consumer expectations test, a product is unreasonably dangerous only if Allstate proves first, that the risk that they claim caused harm was unknowable; and, second, that the risk that they claim caused harm was unacceptable to the average or ordinary consumer.

In making this determination, you should consider factors such as the nature of the product and its intended use; the product's intended user; whether any warnings or instructions that accompanied the product address the risk involved; and the level of knowledge in the general community about the product and its risks.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.20(2)*

**<u>Proposed Jury Instruction No. 4 - Strict Liability – Design Defect – Determination of Defect</u>**

*Risk-Utility*

<u>Allstate</u> claims that <u>they were</u> harmed by a product that was defective in that it was unreasonably dangerous under the risk-utility test.

The risk-utility test requires <u>Allstate</u> to prove how a reasonable manufacturer should weigh the benefits and risks involved with a particular product, and whether the omission of any feasible alternative design proposed by <u>Allstate</u> rendered the product unreasonably dangerous.

In determining whether the product was defectively designed under the risk-utility test, and whether its risks outweighed the benefits, or utility, of the product, you may consider the following factors:

(1) The usefulness, desireability and benefits of the product to all ordinary consumers – <u>Allstate's subrogors</u>, other users of the product, and the public in general – as compared to that product's dangers, drawbacks, and risks of harm;

(2) The likelihood of foreseeable risks of harm and the seriousness of such harm to foreseeable users of the product;

(3) The availability of a substitute product which would meet the same need and involve less risk, considering the effects that the substitute product would have on <u>Allstate's subrogors</u>, other users of the product, and the public in general;

(4) The relative advantages and disadvantages of the design at issue and <u>Allstate's</u> proposed feasible alternative, including the effects of the alternative design on product costs and usefulness, such as, longevity, maintenance, repair, and desirability;

(5) The adverse consequences of, including safety hazards created by, a different design to <u>Allstate's subrogors</u>, other users of the product, and the public in genera;

(6) The ability of product users to avoid the danger by the exercise of care in their use of the product; and

(7) The awareness that ordinary consumers would have of dangers associated with their use of the product, and their knowledge of such dangers because of general public knowledge, obviousness, warnings, or availability of training concerning those dangers.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.20(3)*

**Proposed Jury Instruction No. 5 - Strict Liability - Duty to Warn/Warning Defect**

Even a perfectly made and designed product may be defective if not accompanied by adequate warnings or instructions. Thus, Electrolux may be liable if you find that inadequate, or absent, warnings or instructions made its product unreasonably dangerous for [intended] [reasonably foreseeable] uses. A product is defective due to inadequate warnings when distributed without sufficient warnings to notify [intended] [reasonably foreseeable] users of non-obvious dangers inherent in the product.

Factors that you may consider in deciding if a warning is adequate are the nature of the product, the identity of the user, whether the product was being used in an [intended] [reasonably foreseeable] manner, the expected experience of its intended users, and any implied representations by the manufacturer or other seller.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.30*

**Proposed Jury Instruction No. 6 - Strict Liability – Post-Sale Duty to Warn**

The duty to provide an adequate product warning can arise even after the product is sold, under certain circumstances.  First, as you were instructed earlier, the product's unreasonably dangerous condition must have existed at the time the product left Electrolux's control.  Second, the potential harm must be both substantial and preventable.  Third, Electrolux must have learned about the risk created by the product's unreasonably dangerous condition sufficiently before Allstate's subrogors suffered harm so that Electrolux could take reasonable steps to warn reasonably foreseeable users about the risk.  Fourth, a reasonable and practical means must have existed so that Electrolux's post-sale warning would have been received and acted upon, either by Allstate's subrogors, or by someone else in a position to act, in a way that would have prevented the harm to Allstate's subrogors.

Factors you may consider in deciding if a post-sale warning should have been given include the nature of the product, the nature and likelihood of harm, the feasibility and expense of issuing a warning, whether the claimed defect was repairable, whether the product was mass-produced, or alternatively sold in a small and distinct market, whether the product's users could be easily identified and reached, and the likelihood that the product's purchases would be unaware of the risk of harm.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.35*

## **Proposed Jury Instruction No. 7 – "Heeding Presumption" for Seller/Defendant where warning or instructions are given**

Where the defendant provides adequate product warnings or instructions, it may reasonably assume that those warnings will be read and heeded.  You may not find <u>Electrolux</u> liable for harm caused by <u>Allstate's subrogors</u> not reading or heeding adequate warnings or instructions provided by <u>Electrolux.</u>

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.40*

**<u>Proposed Jury Instruction No. 8 – Strict Liability – Factual Cause</u>**

   If you find that the product was defective, the defendant is liable for all harm caused to

<u>Allstate's subrogors</u> by such defective condition. A defective condition is the factual cause of harm

if the harm would not have occurred absent the defect. In order for <u>Allstate</u> to recover in this case,

the defendant's conduct must have been a factual cause of the accide<u>nts</u>.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.70*

**<u>Proposed Jury Instruction No. 9 – Products Liability – (Multiple Possible Contributing Causes)</u>**

In this case you must evaluate evidence of several possible causes, including a defective condition in the defendant's product, to decide which, if any, are factual causes of the <u>Allstate's</u> harm. A possible cause becomes a legal cause of <u>Allstate's</u> harm when it was a substantial factor in bringing that harm about. In order for <u>Allstate</u> to recover in this case, the defective condition in the defendant's product thus must have been a substantial factor in bringing about <u>Allstate's</u> harm. More than one substantial factors may combine to bring about <u>Allstate's</u> harm.

You should use your common sense in determining whether each possible cause was a substantial factor in bringing about <u>Allstate's</u> harm. A substantial factor must be an actual real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with <u>Allstate's</u> harm.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.80*

**<u>Proposed Jury Instruction No. 10 – Strict Liability – State of the Art Evidence</u>**

Compliance with Product Safety Statutes or Regulations

You have heard evidence that the <u>subject dryers</u> complied with the <u>industry standards – ANSI Z21.5.1 (gas dryers) and UL 2158 (electric dryers)</u>. While compliance with <u>those industry standards</u> is not conclusive, it is a factor you should consider in determining whether the design of the product was defective so as to render the product unreasonably dangerous.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.122(2)*

**Proposed Jury Instruction No. 11 – Strict Liability – State of the Art Evidence**

Compliance with Industry Standards

You have heard evidence that the subject dryers complied with the design and safety customs or practices in the dryer industry. While compliance with these industry standards is not conclusive, it is a factor you should consider in determining whether the design of the product was defective so as to render the product unreasonably dangerous.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.122(3)*

**<u>Proposed Jury Instruction No. 12 - Strict Liability – Plaintiff Conduct Evidence</u>**

You have heard evidence about the manner that <u>Allstate's subrogors</u> used the <u>subject dryers</u>. You may consider this evidence as you evaluate whether the product was in a defective condition and unreasonably dangerous to the user. However, <u>the</u> failure of <u>Allstate's subrogors</u> to exercise care while using a product does not require your verdict to be for <u>Electrolux</u>.

If the evidence is that <u>Allstate's subrogors'</u> conduct was "highly reckless" and creates a jury question whether this conduct could be "a sole or superseding cause" of <u>Allstate's</u> harm, then the jury should also be instructed on that conduct as a superseding cause.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.122(4)*

**Proposed Jury Instruction No. 13 – Defense of Assumption of Risk**

If <u>any of Allstate's subrogors</u> knew of the specific defect eventually causing <u>their</u> injury and voluntarily proceeded to use the product with knowledge of the danger caused by this specific defect, <u>they are</u> barred from recovery. <u>They are</u> not barred from recovery, however, if <u>they</u> did not actually discover the defect prior to the accident or failed to recognize and appreciate its danger, regardless of what other persons might have done in the same circumstances. Nor <u>are they</u> barred from recovery by any negligence on <u>their</u> part. Voluntary exposure to a dangerous situation does not bar recovery, unless the danger known and recognized by <u>Allstate's subrogors</u> was that caused by the specific defect eventually causing <u>their</u> injury. It is the defendant's burden to prove that <u>Allstate's subrogors</u> actually knew of the defect, appreciated its danger, and voluntarily chose to encounter it.

*Pa. SSJI (Civ) § 16.130*

**<u>Proposed Jury Instruction No. 14 – Affirmative Defense: Substantial Change</u>**

A <u>manufacturer</u> is not liable for defective conditions created by substantial changes in the product occurring after the product has been sold.  The test to determine if an alteration to a product is a "substantial change" is whether the manufacturer could have reasonably expected or foreseen such an alteration.  To succeed on this defense, <u>Electrolux</u> must prove that:

1. The <u>subject dryers were</u> altered after <u>they</u> left <u>Electrolux's</u> possession; and

2. The alteration was so extraordinary that it was not reasonably foreseeable to <u>Electrolux</u>, and therefore was the only factual cause of <u>Allstate's subrogors'</u> harm.

*Pa. SSJI (Civ) § 16.120*

**Proposed Jury Instruction No. 15 – Affirmative Defense: Use of Product in Unintended Way**

A <u>manufacturer</u> is not liable for harm caused by the use of the product in a way that was unintended and unforeseeable.

To succeed in this defense, <u>Electrolux</u> must prove that:

1.   The <u>subject dryers were</u> used in an unintended way; and

2.   The use was so extraordinary that it was not reasonably foreseeable to Electrolux, and therefore should be considered as the sole cause of <u>Allstate's</u> harm.

*Pa. SSJI (Civ) § 16.121*

**Proposed Jury Instruction No. 16**

Under Pennsylvania law, <u>Allstate's subrogors</u> have a duty to protect themselves from "careless exposure . . . to danger or  . . . failure to exercise reasonable diligence for [their] own protection"  *Columbia Med. Group, Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184, 1192 (Pa. Super Ct. 2003).

**Proposed Jury Instruction No. 17**

"[A] material change in the product severs the chain of causation where the plaintiff would not have been injured had the product remained in its unaltered state."  *Davis v. Berwind Corp.*, 433 Pa. Super. 342 (Pa. Super. 1994) (quoting Restatement (Second) of Torts, Section 402A, comment g).

**<u>Proposed Jury Instruction No. 18</u>**

"Where a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition . . . ." *Davis v. Berwind Corp.*, 433 Pa. Super. 342, 356 (Pa. Super. 1994) (quoting Restatement (Second) of Torts, Section 402A, comment j.

**Proposed Jury Instruction No. 19 - Burden of Proof and Preponderance of Evidence**

Under the law, <u>Allstate</u> has the burden of proving <u>their</u> claims.

[T]his is a civil case, not a criminal case. The burden of proof in a civil case is different from the burden of proof in a criminal case. In a civil case, <u>Allstate</u> must prove <u>their</u> claims by a legal standard called a "preponderance of the evidence." Preponderance of the evidence means that a fact is more likely true than not.

Think about the scales of justice or an old-fashioned balance scale with a pan on each side to hold objects. Imagine using the scale as you deliberate in the jury room. Place all the believable evidence favorable to the plaintiff in one pan. Place all the believable evidence favorable to the defendant in the other. If the scales tip, even slightly, to <u>Allstate's</u> side, then <u>Allstate</u> has met <u>their</u> burden of proving that fact. If, however, the scales tip even slightly on <u>Electrolux's</u> side, or if the two sides of the scale balance equally, <u>Allstate</u> has not met <u>their</u> burden of proof.

<u>Allstate</u> has asserted claims of strict liability (Count I) and negligence (Count II) against Electrolux.  In regard to the negligence cause of action:

<u>Allstate</u> has the burden of proving that each of the following is more likely true than not:

1. <u>Electrolux</u> was negligent; and

2. <u>Electrolux's</u> negligence was a factual cause in bringing about the [damages].

<u>Allstate</u> also has the burden of proving the extent of damages caused by the <u>Electrolux's</u> <u>alleged</u> negligence.

*Pa. SSJI (Civ), §5.00*

**<u>Proposed Jury Instruction No. 20 – Plaintiff's Contributory Negligence</u>**

As a defense, <u>Electrolux</u> claims that <u>Allstate's subrogors'</u> own negligence was a factual cause of <u>their</u> injuries.  <u>Electrolux</u> has he burden to prove the following:

1.   that <u>Allstate's subrogors were</u> negligent; and

2.   that <u>Allstate's subrogors'</u> negligence was a factual cause of their injury.

*Pa. SSJI (Civ) 13.210*

**Proposed Jury Instruction No. 21 – Uncalled Witness Equally Available**

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified had they been called. Their absence should not affect your judgment in any way.

*Modern Federal Jury Instruction, 75-4* (unmodified)

**<u>Proposed Jury Instruction No. 22 – Inferences</u>**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

*3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.)*

**<u>Proposed Jury Instruction No. 23 – Inference Against Defendant Does Not Shift Burden of Proof</u>**

The mere existence of an inference against the Defendant does not relieve <u>Allstate</u> of their burden of establishing their case by a preponderance of the evidence. If <u>Allstate is</u> to obtain a verdict, you must still believe from the credible evidence that <u>Allstate has</u> sustained the burden cast upon them. If they have failed, then your verdict must be for <u>Electrolux</u>. If you should find that all of the evidence is evenly balanced, then <u>Allstate has</u> failed to sustain the burden of proof and your verdict should be for <u>Electrolux</u>.

If and only if you determine, after carefully weighing all the evidence, that the facts favor <u>Allstate</u> by the standard I have articulated, then they have met the burden of proof.

*Modern Federal Jury Instruction 75-2* (modified)

**Proposed Jury Instruction No. 24 – Adverse Inference**

Almodovar

In connection with the Almodovar matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the flexible foil venting and the exterior vent hood. This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux. You are permitted to infer that the destroyed evidence, namely the flexible foil venting and the exterior vent hood, would have revealed facts unfavorable to the position of Allstate in this matter.

Bullene

In connection with the Bullene matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the exterior vent hood. This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux. You are permitted to infer that the destroyed evidence, namely the exterior vent hood, would have revealed facts unfavorable to the position of Allstate in this matter.

Gray

In connection with the Gray matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the entire permanent venting system. This evidence was destroyed by Allstate and not made available for inspection and testing by Defendant. You are permitted to infer that the destroyed evidence, namely the permanent venting system, would have revealed facts unfavorable to the position of Allstate in this matter.

Quinn

In connection with the Quinn matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the entire flexible foil venting system and the exterior vent hood.  This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux.  You are permitted to infer that the destroyed evidence, namely the entire flexible foil venting system and the exterior vent hood, would have revealed facts unfavorable to the position of Allstate in this matter.

Venbrux

In connection with the Venbrux matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically portions of the rigid venting system and the metal vent hood.  This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux.  You are permitted to infer that the destroyed evidence, namely portions of the rigid venting system, would have revealed facts unfavorable to the position of Allstate in this matter.

**<u>Proposed Jury Instruction No.  25 – Damage to Property</u>**

If you find for <u>Allstate</u> in accordance with these instructions, then you must determine the damage to which <u>Allstate</u> is entitled for injury to their <u>subrogors'</u> property.  As compensation for damages to that property, <u>Allstate is</u> entitled to recover the lesser of two figures arrived at as follows:

One figure is the reasonable expense of necessary repair of the property plus the difference in the fair market value of the property immediately before the occurrence and the fair market value after the property is repaired.

The other figure is the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

You may award for property damages the lesser of these two figures only.

*3 Fed. Jury Prac. & Instr. § 129:01 (6th ed.)*

**Proposed Jury Instruction No.  26 – Measure of Damage to Property**

The general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability, and in situations in which the harm is reparable, damages are assessed according to the lesser of the cost of repair or the market value of the affected property.  *See Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 587 Pa. 236, 246, 898 A.2d 590 (Pa. 2006).  Calculation of the decrease in fair market value takes into account depreciation.  *See Id.* at 598.

**Proposed Jury Instruction No.  27 – Measure of Damage to Real Property**

"Fair market value" is the price at which a fully informed, willing owner would have voluntarily sold and a fully informed willing buyer would have voluntarily bought the property in question.

*3 Fed. Jury Prac. & Instr. § 129:02 (6th ed.).*  See *United States v. Crown Equipment Corp.*, 86 F.3d 700, 708 (7th Cir.1996) (fair market value is that sum of money property would have brought if sold by owner willing but not required to buyer willing but not required to buy).

**Proposed Jury Instruction No.   28 – Election of foreperson; duty to deliberate; communications with court; cautionary; unanimous verdict; verdict form**

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember you should not tell anyone—including me— how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law I have given to you in these instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. *[The form reads: [quote]].* You will take this form to the jury room, and when each of you

has agreed on the verdict[s], your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

*3 Fed. Jury Prac. & Instr. § 103:50 (6th ed.)*

Respectfully submitted,

NICOLSON LAW GROUP LLC


BY:        /s/ Melissa L. Yemma
              CHERYL M. NICOLSON, ESQUIRE
              Attorney I.D. No. 57422
              MELISSA L. YEMMA, ESQUIRE
              Attorney I.D. No. 92194
              Rose Tree Corporate Center II
              1400 N. Providence Road, Suite 6035
              Media, PA 19063
              (610) 891-0300
              nicolson@nicolsonlawgroup.com
              yemma@nicolsonlawgroup.com

              Attorneys for Defendant,
              Electrolux Home Products, Inc.

DATE: January 15, 2019

32

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE | : NO. 5:16-cv-04276-EGS |
| INDEMNITY COMPANY; ALLSTATE PROPERTY & | : |
| CASUALTY INSURANCE COMPANY; ALLSTATE | : |
| VEHICLE & PROPERTY INSURANCE COMPANY | : |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| ELECTROLUX HOME PRODUCTS, INC. | : |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Defendant, Electrolux Home Products, Inc.'s Proposed Jury Instructions were served electronically on the date stated below, upon the following:

> NICOLSON LAW GROUP LLC
>
> BY:  _____/s/ Melissa L. Yemma_____
>          CHERYL M. NICOLSON, ESQUIRE
>          Attorney I.D. No. 57422
>          MELISSA L. YEMMA, ESQUIRE
>          Attorney I.D. No. 92194
>          Rose Tree Corporate Center II
>          1400 N. Providence Road, Suite 6035
>          Media, PA 19063
>          (610) 891-0300
>          nicolson@nicolsonlawgroup.com
>          yemma@nicolsonlawgroup.com
>
>          Attorneys for Defendant,
>          Electrolux Home Products, Inc.

DATE: January 15, 2019