## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY,**<br><br>          **Plaintiffs**<br><br>    **v.**<br><br>**ELECTROLUX HOME PRODUCTS, INC.**<br><br>          **Defendant** | **Case No.: 16-cv-04276 EGS** |

## THE PARTIES' PROPOSED JURY INSTRUCTIONS

The Parties, by and through their counsel, hereby submit the following Proposed Jury Instructions.  The Parties reserve the right to supplement or revise the following Proposed Jury Instructions based on the evidence that develops at trial or as may otherwise be appropriate.

**de LUCA LEVINE LLC**

**BY:**  /s/ Patrick A. Hughes_____
RAYMOND E. MACK, ESQUIRE
PA ID No.: 91815
E-Mail: rmack@delucalevine.com
PATRICK A. HUGHES, ESQUIRE
PA ID No.: 91415
E-Mail:  phughes@delucalevine.com
ATTORNEYS FOR PLAINTIFFS
512 Township Line Road, Suite 220
Blue Bell, PA  19422
Telephone:(215) 383-0081

**NICOLSON LAW GROUP LLC**

**BY:** /s/ Melissa L. Yemma_____
CHERYL M. NICOLSON, ESQUIRE
PA ID No.: 57422
E-Mail: nicolson@nicolsonlawgroup.com
MELISSA L. YEMMA, ESQUIRE
PA ID No.: 92194
E-Mail:  yemma@nicolsonlawgroup.com
ATTORNEYS FOR DEFENDANT
1400 North Providence Road, Suite 6035
Media, PA  19063
Telephone:(610) 891-0300

## **Proposed Jury Instruction No. 1 – Role of the Jury**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts.  You will have to decide what happened. I play no part in judging the facts.  You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.  My role is to be the judge of the law.  I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

*Model Civ. Jury Instr. 3rd Cir. 1.1, at p. 3. (2017)*

| Modified: _____ | Unchanged: <u>X</u> |

## **Proposed Jury Instruction No. 2 – Conduct of the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones, like Blackberries and iPhones, and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as Twitter], or through any blog, website, internet chat room, or by way of any other social networking websites or services, including Facebook, MySpace, LinkedIn, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this

case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance. You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.

*Model Civ. Jury Instr. 3rd Cir. 1.3 at pp. 5-7 (2017)*

| Modified: _____ | Unchanged: <u>X</u> |
| --- | --- |

## Proposed Jury Instruction No. 3 – Bench Conferences

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.  While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Model Civ. Jury Instr. 3rd Cir. 1.4 at p. 8 (2017)*

| Modified: _____ | Unchanged:  <u>X</u> |
|---|---|

**Proposed Jury Instruction No. 4 – Evidence**

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated—that is, formally agreed to by the parties; and

4. Any facts that are judicially noticed—that is, facts I say you must accept as true even without
   other evidence.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers;

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced

by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

*Model Civ. Jury Instr. 3rd Cir. 1.5 at pp. 9-10 (2017)*

| Modified: _____ | Unchanged: <u>X</u> |

## **Proposed Jury Instruction No. 5 – Direct and Circumstantial Evidence**

*Option 2:*

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

*Model Civ. Jury Instr. 3rd Cir. 1.6 at pp. 11-12 (2017)*

| Modified: _____ | Unchanged:  X |
|---|---|

**<u>Proposed Jury Instruction No. 6 – Credibility of Witnesses</u>**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

*Model Civ. Jury Instr. 3rd Cir. 1.7 at pp. 13-14 (2017)*

| Modified: _____ | Unchanged: <u>X</u> |
|---|---|

**<u>Proposed Jury Instruction No. 7 – Preponderance of the Evidence</u>**

This is a civil case.  Plaintiffs are the party that brought this lawsuit.  Defendant is the party against which the lawsuit was filed.  Plaintiffs have the burden of proving their case by what is called the preponderance of the evidence.  That means Plaintiffs have to prove to you, in light of all the evidence, that what they claim is more likely so than not so. To say it differently: if you were to put the evidence favorable to Plaintiffs and the evidence favorable to Defendant on opposite sides of the scales, Plaintiffs would have to make the scales tip somewhat on their side. If Plaintiffs fail to meet this burden, the verdict must be for Defendant.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Defendant  has the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense.  An affirmative defense is proven if you find, after considering all evidence in the case, that Defendant has succeeded in proving that the required facts are more likely so than not so.

**[[Defendant] has also brought claims for relief against [plaintiff], called counterclaims. On these claims, [defendant] has the same burden of proof as has [plaintiff] on [his/her/its] claims.]]**

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this. So you should put it out of your mind.

*Model Civ. Jury Instr. 3rd Cir. 1.10 at pp. 19-20 (2017)*

| Modified: _____ | Unchanged: <u>X</u> |
|---|---|

## <u>Proposed Jury Instruction No. 8 – Description of Trial Proceedings</u>

The trial will proceed in the following manner:

First, attorney(s) for Plaintiffs will make an opening statement to you. Next, attorney(s) for Defendant may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After [Before] the attorneys have made their opening statements, I will instruct you on the applicable law and then each party is given an opportunity to present its evidence.

Plaintiffs go first because Plaintiffs have the burden of proof.  Plaintiffs will present witnesses whom counsel for Defendant may cross-examine, and Plaintiffs may also present evidence.  Following Plaintiffs' case, Defendant may present evidence. Counsel for Plaintiffs may cross-examine witnesses for the defense. After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.

After all the evidence has been presented, I will instruct you on the law and then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions.  As with opening statements, closing arguments are not evidence.  Once the closing arguments are completed, I will then instruct you on the law.  After that you will retire to the jury room to deliberate on your verdict in this case.

**[At this point the court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.]**

*Model Civ. Jury Instr. 3rd Cir. 1.10 at p. 22.(2017)*

| Modified: _____ | Unchanged: <u>X</u> |

**<u>Proposed Jury Instruction No. 9 – Opinion Testimony</u>**

You will hear testimony containing opinions from <u>Michael Stoddard, William Vigilante, Kenneth Garside, Frank Schwalje, J.P. Purswell and John McHenry</u>.  In weighing this opinion testimony, you may consider his qualifications, the reasons for his opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinions of <u>Michael Stoddard, William Vigilante, Kenneth Garside, Frank Schwalje, J.P. Purswell and John McHenry</u> should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of <u>Michael Stoddard, William Vigilante, Kenneth Garside, Frank Schwalje, J.P. Purswell and John McHenry</u> you may consider any bias that <u>they</u> may have, including any bias that may arise from evidence that <u>they have</u> been or will be paid for reviewing the case and testifying or from evidence that <u>they</u>  <u>testify</u> regularly and make a large portion of <u>their</u> [his] income from testifying in court.

*Model Civ. Jury Instr. 3rd Cir. 2.11 at p. 34 (2017)*

| Modified: _____ | Unchanged: <u>X</u> |
|---|---|

**<u>Proposed Jury Instruction No. 32 – Negligence – Factual Cause</u>**

In order for the Plaintiffs to recover in this case, Defendant's negligent conduct must have been a factual cause in bringing about harm.  Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.  To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.   A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

To be a factual cause, Defendant's conduct need not be the only factual cause. The fact that some other causes concur with Defendant's negligence in producing an injury does not relieve Defendant from liability as long as its own negligence is a factual cause of the injury.

*13.20 (Civ) Factual Cause, Pa. SSJI (Civ), §13.20 (2014)*

| Modified: _____ | Unchanged:  <u>X</u> |
|---|---|

**<u>Proposed Jury Instruction No.  40 – Damages – Measure of Damages to Personal Property</u>**

I now instruction on the law for the proper measure of damages to the Plaintiffs' personal property.

The measure of damages for the total loss or destruction of personal property is its reasonable value at the time of the loss, considering its age, condition at that time, and any post-tort salvage value. *Noerr v. Lewistown Smelting & Refining, Inc*., 60 Pa. D. & C.2d 406, 1973 WL 16571 (C.P. 1973); *Daughen v. Fox*, 372 Pa. Super. 405, 539 A.2d 858 (1988); *Denby v. North Side Carpet Cleaning Co*., 257 Pa. Super. 73, 390 A.2d 252 (1978); *Denby v. North Side Carpet Cleaning Co*., 257 Pa. Super. 73, 390 A.2d 252 (1978); *Russell v. United States*, 113 F. Supp. 353 (M.D. Pa. 1953).

**<u>Proposed Jury Instruction No.  41 – Damages – Additional Living Expenses</u>**

I now instruction on the law for the recovery of additional living expenses the Plaintiffs claim to have occurred as a result of this fire.

When one's property is damaged, the injured party is entitled to compensation for all financial losses resulting from the destruction of its property. Additional or extraordinary expenses are an element of damages which should be considered where the amount of such expenses can be determined with reasonable accuracy from the evidence.   These additional and extraordinary expenses would include Plaintiffs' additional living expenses and the cost to clean up the building after the fire.  *Spiese v. Mutual Trust Co.,* 258 Pa. 414, 102 A. 119 (1917); *Donnan v. Pennsylvania Torpedo Company,* 26 Pa. Super. 324 (1904); *Pa. Suggested Standard Jury Instructions,* Civil, 6.01 J. (1981).

| **Plaintiffs' Proposed Jury Instruction No. 10 - Strict Liability** | **Electrolux's Proposed Jury Instruction No. 1 – General Rule of Strict Liability** |
|---|---|
| The Plaintiffs' case against Defendant is based in part on the law of strict liability.<br><br>The Plaintiffs claim that they were harmed by ball-hitch clothes dryers designed, manufactured and distributed by Defendant. Here, Plaintiffs assert three distinct theories of how Defendant's dryers were defective: (1) the design permits lint to accumulate behind the dryer drum, out of sight and inaccessible to the user and in close proximity to the heat source, allowing it to ignite; (2) the use of combustible plastic parts instead of metal parts allows the fire to breach the dryer cabinet and constitutes a source of secondary fuel, causing the fire to spread instead of being contained; and (3) the warnings do not adequately inform consumers of the fire hazard posed by these design features. The Plaintiffs also claim that the dryers contained a manufacturing defect in their felt seals that caused the seals to compress and a gap to form between the lower felt and the drum glide resulting in poor airflow and lint accumulation inside the dryer cabinet.<br>A product is defective and the defendant is liable for all harm caused by the product if you find that:<br>1. at the time the product left Defendant's control, it lacked any element necessary to make it safe for its intended use or use in an unintended but reasonably foreseeable way, or contained any condition that made it unsafe for its intended use or use in an unintended but reasonably foreseeable way; and<br>2. the product reached the user or consumer without substantial change in the condition in which it is sold. | Allstate claims that they provided insurance coverage to property owners ("Allstate's subrogors") who suffered property damage as a result of fires caused by the ignition of accumulated lint in clothes dryers (hereinafter the "subject dryers")], which were manufactured and distributed by Electrolux.<br><br>To recover for this harm, Allstate must prove by a fair preponderance of the evidence each of the following elements:<br>(1) Electrolux is in the business of distributing, manufacturing and selling such a product;<br>(2) The product in question had a defect that made it unreasonably dangerous;<br>(3) The product's unreasonably dangerous condition existed at the time the product left the defendant's control;<br>(4) The product was expected to and did in fact reach Allstate's subrogors, and was thereafter used at the time of the subject fires, without substantial change in its condition; and<br>(5) The unreasonably dangerous condition of the product was a substantial factor in causing harm to Allstate's subrogors.<br>"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.10* |

Under the law, a manufacturer of a defective product is strictly liable for the injuries caused by such defect, even if the manufacturer has taken all possible care in the design, manufacture, distribution, and sale of the product.

*16.10 (Civ) General Rule of Strict Liability, Pa. SSJI (Civ), §16.10 (2016); Tincher v. Omega Flex, Inc., 628 Pa. 296, 388, 104 A.3d 328, 383 (2014) (Restatement (2d) of Torts § 402A cmt. c.) Pavlik v. Lane Ltd./Tobacco Exp. Int'l, 135 F.3d 876, 881 (3d. Cir. 1998)* (modified)

### Plaintiffs' Proposed Jury Instruction No. 11 - Strict Liability – Duty of Care

"A seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it." The "public has a right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods."  "[P]ublic policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained."  A "consumer of such products is entitled to the maximum of protection at the hands of someone, and proper persons to afford it are those who market the products."

"Stated affirmatively, a person or entity engaged in the business of selling a product has a duty to make and /or market the product – which is expected to and does reach the user or consumer without substantial change in the condition in which it is sold – free from a defective condition. *Tincher v. Omega Flex, 104 A.3d 328, 383 (Pa. 2014).*

**Plaintiffs' Proposed Jury Instruction No. 12 - Strict Liability versus Negligence**

A manufacturer is liable if that manufacturer designs a defective product despite taking all reasonable steps to make a safe product.  That is, the law provides that if a product is unsafe in its design, then the manufacturer is responsible for all resulting harm.  Under Plaintiffs' strict liability claims, the conduct a due care of the manufacturer is not relevant and must not be considered by you.

*Tincher v. Omega Flex,* 104 A.3d 328, 400 (Pa. 2014)

**Electrolux's Proposed Jury Instruction No. 2 – Strict Liability – Design Defect – Determination of Defect**

***Finding of Defect Requires "Unreasonably Dangerous" Condition***

Allstate claims that the subject dryers were defective and that the defect caused Allstate's subrogors harm. Allstate must prove that the product contained a defect that made the product unreasonably dangerous.

Allstate's evidence must convince you both that the product was defective and that the defect made the product unreasonably dangerous.

In considering whether a product is unreasonably dangerous, you must consider the overall safety of the product for all [intended] [reasonably foreseeable] uses. You may not conclude that the product is unreasonably dangerous only because a different design might have reduced or prevented the harm suffered by Allstate in this particular incident. Rather, you must consider whether any alternative proposed by Allstate would have introduced into the product other dangers or disadvantages of equal or greater magnitude.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.20(1)*

| **Plaintiffs' Proposed Jury Instruction No. 13– Strict Liability – Determination of Design Defect - Consumer Expectation Test** | **Electrolux's Proposed Jury Instruction No. 3 – Strict Liability – Design Defect – Determination of Defect** |
|---|---|
| | *Consumer Expectations* |
| The Plaintiffs claim that they were harmed by products that were defective under the consumer expectation test.  To establish their claim under the consumer expectation test, the Plaintiffs must prove all of the following: | Allstate claims that they were harmed by a product that was defective in that it was unreasonably dangerous under the consumer expectations test. |
| 1.   that   Defendant   designed, manufactured, distributed or sold the products; and | Under the consumer expectations test, a product is unreasonably dangerous if you find that the product is dangerous to an extent beyond what would be contemplated by the ordinary consumer who purchases the product, taking into account that ordinary consumer's knowledge of the product and its characteristics. |
| 2.  the products did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended way or used in an unintended but reasonably foreseeable way; and | |
| 3. the products' defective condition was a factual cause of the Plaintiffs' harm. | Under the consumer expectations test, a product is unreasonably dangerous only if Allstate proves first, that the risk that they claim caused harm was unknowable; and, second, that the risk that they claim caused harm was unacceptable to the average or ordinary consumer. |
| In    determining    whether    a products' condition was defective under this test, you may consider the following factors: | |
| 1. the nature of the products; | In making this determination, you should consider factors such as the nature of the product and its intended use; the product's intended user; whether any warnings or instructions that accompanied the product address the risk involved; and the level of knowledge in the general community about the product and its risks. |
| 2. the identity of the user; | |
| 3. the products' intended use; | |
| 4. the intended user of the products; and/or | |
| 5. any express or implied representations by Defendant. | |
| *16.20 (Civ) Determination of Design Defect, Pa. SSJI (Civ), §16.20 (2016); Tincher v. Omega Flex, Inc., 628 Pa. 296, 388, 104 A.3d 328, 378 (2014)* (unchanged) | "Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.20(2)* |

**Plaintiffs' Proposed Jury Instruction No. 14– Strict Liability – Determination of Design Defect - Risk-Utility Test – Shifting Burden of Proof Alternative Charge**

The Plaintiffs also claim that the products were defective because they failed the risk-utility test.  Under this test, you may find the products defective if you determine that a reasonable person would conclude that the possibility and seriousness of the harm caused by the products outweigh the burden or costs of taking precautions.

To establish this claim, the Plaintiffs must prove all of the following:
1.  that Defendant manufactured, distributed or sold the products;
2. that the Plaintiffs were harmed; and
3. that the products' design was a factual cause in causing harm to the Plaintiffs.

If the Plaintiffs have proved these three facts, then your decision on this claim must be for the Plaintiffs unless Defendant proves that the benefits of the products' design outweigh the risks of the design.  In deciding whether the benefits outweigh the risks, you should consider the following:
1. the seriousness of the potential harm resulting from the use of the products;
2. the likelihood that this harm would occur;
3. the feasibility of an alternative safer design at the time of manufacture;
4. the cost of an alternative design; [and]
5. the disadvantages of an alternative design;

*16.20 (Civ) Determination of Design Defect, Pa. SSJI (Civ), §16.20 (2016); Subcommittee notes; Tincher v. Omega Flex,* 104 A.3d 328, 389-390 (Pa. 2014).

**Electrolux's Proposed Jury Instruction No. 4 - Strict Liability – Design Defect – Determination of Defect**

*Risk-Utility*

Allstate claims that they were harmed by a product that was defective in that it was unreasonably dangerous under the risk-utility test.

The risk-utility test requires Allstate to prove how a reasonable manufacturer should weigh the benefits and risks involved with a particular product, and whether the omission of any feasible alternative design proposed by Allstate rendered the product unreasonably dangerous.

In determining whether the product was defectively designed under the risk-utility test, and whether its risks outweighed the benefits, or utility, of the product, you may consider the following factors:

(1) The usefulness, desireability and benefits of the product to all ordinary consumers – Allstate's subrogors, other users of the product, and the public in general – as compared to that product's dangers, drawbacks, and risks of harm;

(2) The likelihood of foreseeable risks of harm and the seriousness of such harm to foreseeable users of the product;

(3) The availability of a substitute product which would meet the same need and involve less risk, considering the effects that the substitute product would have on Allstate's subrogors, other users of the product, and the public in general;

(4) The relative advantages and disadvantages of the design at issue and

|  | Allstate's proposed feasible alternative, including the effects of the alternative design on product costs and usefulness, such as, longevity, maintenance, repair, and desirability; |
|  | (5) The adverse consequences of, including safety hazards created by, a different design to Allstate's subrogors, other users of the product, and the public in genera; |
|  | (6) The ability of product users to avoid the danger by the exercise of care in their use of the product; and |
|  | (7) The awareness that ordinary consumers would have of dangers associated with their use of the product, and their knowledge of such dangers because of general public knowledge, obviousness, warnings, or availability of training concerning those dangers. |
|  | "Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.20(3)* |

**Plaintiffs' Proposed Jury Instruction No. 15 – Strict Liability – Enhanced Injury Doctrine**

The Plaintiffs also claim that the dryers were defective because they used plastic components instead of metal.   The plastic components acted as fuel for the initial lint fire and allowed the fire to spread within and escape the dryers.   The Plaintiffs allege this enhanced or increased the damages they suffered.

Under Pennsylvania law, the enhanced injury doctrine provides that a manufacturer is liable when the defect does not cause the initial accident, here the initial lint fire, but rather increased the severity of the injury over that which would have occurred absent the design defect. Kupetz v. Deere & Co., 435 Pa. Super. 16, 26, 644 A.2d 1213, 1218 (1994) (citing *Mills v. Ford Motor Co.,* 142 F.R.D. 271 (M.D. Pa 1990).

To establish an enhanced injury claim, the Plaintiffs must prove all of the following:

1. that the design of the dryers were defective and that when the design was made, an alternative, safer design practicable under the circumstances existed;

2. what injuries, if any, would have resulted to the Plaintiffs had the alternative, safer design been in fact used; and

3. some method of establishing of establishing the extent of the Plaintiffs' enhanced injuries attributable to the defective design.

Here, if the Plaintiffs have proved these three facts, then your decision on this claim must be for the Plaintiffs.

*Calloway v. Hobart Corp*., 1993 WL 172898 at P. 4 (E.D. Pa 1993) (*citing Larsen v. General Motors Corp.,* 391 F.2d 495, 503 (8th Cir. 1968)).

**Plaintiffs' Proposed Jury Instruction No. 16 - Strict Liability – Manufacturing Defect – Essential Elements**

The Plaintiffs claim that the subject dryer contained a manufacturing defect in their felt seals that caused the seals to compress and a gap to form between the lower felt and the drum glide resulting in poor airflow and lint accumulation inside the dryer cabinet.   A product contains a manufacturing defect if the product differs from the manufacturer's design or specifications or from other typical units of the same product line.  To establish this claim, the Plaintiffs must prove all of the following:

1. That Defendant manufactured, distributed or sold the products;

2. That the products contained a manufacturing defect when it left Defendant's possession;

3. That the Plaintiffs were harmed; and

4. That the products' defect was a factual cause of the Plaintiffs' harm.

*16.15 (Civ) Strict Liability--Manufacturing Defect--Essential Factual Elements, Pa. SSJI (Civ), §16.15 (2016)*

| Modified: X | Unchanged: ____ |
|---|---|

## Plaintiffs' Proposed Jury Instruction No. 17 - Strict Liability – Strict Liability Upon Proof of a Malfunction

A Plaintiff in a strict liability case may prove his or her case merely by showing the occurrence of a malfunction of a product during normal use.  The Plaintiffs need *not* prove the existence of a specific defect in the product.  The Plaintiffs must prove three facts: that the product malfunctioned, that it was given only normal or anticipated use prior to the accident, and that no reasonable secondary causes were responsible for the accident.

*16.90 (Civ) Strict Liability upon Proof of Malfunction, Pa. SSJI (Civ), §16.90 (2016)*

| Modified: _____ | Unchanged:  X |
|---|---|

| **Plaintiffs' Proposed Jury Instruction No. 18 - Strict Liability – Failure to Warn** | **Electrolux's Proposed Jury Instruction No. 5 - Strict Liability - Duty to Warn/Warning Defect** |
|---|---|
| The Plaintiffs allege that the dryers were defective because they were sold without certain warnings and instructions necessary for the dryers' safe use.  Here, the Plaintiffs allege the warnings do not adequately inform users of the fire hazard posed by the design features of the dryer.  Specifically, that the ball-hitch design permits lint to accumulate behind the dryer drum, out of sight and inaccessible to the user and in close proximity to the heat source where it can ignite and spread to combustible plastic component parts. | Even a perfectly made and designed product may be defective if not accompanied by adequate warnings or instructions. Thus, Electrolux may be liable if you find that inadequate, or absent, warnings or instructions made its product unreasonably dangerous for [intended] [reasonably foreseeable] uses. A product is defective due to inadequate warnings when distributed without sufficient warnings to notify [intended] [reasonably foreseeable] users of non-obvious dangers inherent in the product. |
| Even a perfectly made and designed product may be defective if not accompanied by proper warnings and instructions concerning its use. A supplier must give the user or consumer any warnings and instructions of the possible risks of using the product that may be required, or that are created by the inherent limitations in the safety of such use. If you find that such warnings or instructions were not given, the defendant is liable for all harm caused to the plaintiff by the failure to warn. | Factors that you may consider in deciding if a warning is adequate are the nature of the product, the identity of the user, whether the product was being used in an [intended] [reasonably foreseeable] manner, the expected experience of its intended users, and any implied representations by the manufacturer or other seller. |
| *16.30 (Civ) Duty to Warn, Pa. SSJI (Civ), §16.30 (2016)* (modified) | "Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.30* |

**Plaintiffs' Proposed Jury Instruction No. 19 - Strict Liability – Failure to Warn**

Under Pennsylvania law, a seller must give such warning and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. *Restatement (Second) of Torts s 402A, comment H.* If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.

*Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 100, 337 A.2d 893, 902 (1975) abrogated for other reasons by *Reott v. Asia Trend, Inc.,* 618 Pa. 228, 55 A.3d 1088 (2012)

## **Plaintiffs' Proposed Jury Instruction No. 20 - Strict Liability – Failure to Warn**

Where warnings or instructions are required to make a product non-defective, it is the duty of the manufacturer to provide such warnings in a form that will reach the ultimate consumer and inform him/her of risks and inherent limits in the product.

*Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 100, 337 A.2d 893, 903 (1975) abrogated for other reasons by *Reott v. Asia Trend, Inc.,* 618 Pa. 228, 55 A.3d 1088 (2012)

**Plaintiffs' Proposed Jury Instruction No. 21 - Strict Liability – Failure to Warn**

A product may still be defective even if the danger is warned against.  A manufacturer, like Defendant, may be liable for failure to adequately warn where its warning is not prominent, and not calculated to attract the user's attention to the true nature of the danger due to its position, size, or coloring of its lettering. A warning may be found to be inadequate if its size or print is too small or inappropriately located.  The warning must be sufficient to catch the attention of persons who could be expected to use the product, to apprise them of its dangers, and to advise them of the measures to take to avoid these dangers.

*Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 887 (3d Cir. 1998)*

| **Plaintiffs' Proposed Jury Instruction No. 22 - Strict Liability – Duty to Warn – Heeding Presumption for User/Consumer Plaintiff** | **Electrolux's Proposed Jury Instruction No. 7 – "Heeding Presumption" for Seller/Defendant where warning or instructions are given** |
|---|---|
| If you find, instead, that there were warnings or instructions required to make this product non-defective, which were not adequately provided by the Defendant, then you may not find for the Defendant based on a determination that, even if there had been adequate warnings or instructions, the Plaintiff would not have read or heeded them. Instead, the law presumes, and you must presume, that if there had been adequate warnings or instructions, the Plaintiffs would have followed them.<br><br>*16.50 (Civ) Duty to Warn – Heeding Presumption, Pa. SSJI (Civ), §16.50 (2016)* (unchanged) | Where the defendant provides adequate product warnings or instructions, it may reasonably assume that those warnings will be read and heeded. You may not find Electrolux liable for harm caused by Allstate's subrogors not reading or heeding adequate warnings or instructions provided by Electrolux.<br><br>"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.40* |

**Plaintiffs' Proposed Jury Instruction No. 23 - Strict Liability – Duty to Warn – Causation, When "Heeding Presumption" for Plaintiff is Rebutted**

If you find, instead, that there were warnings or instructions required to make this product non-defective, which were not adequately provided by the Defendant, then you must decide whether that failure by the Defendant was a factual cause of the harm to the Plaintiffs.  The question, in other words, is whether the Plaintiffs would have been harmed if the needed warning had been provided.  If you find that the Plaintiffs would have acted to avoid the underlying hazard if such a warning had been provided, then you should find on this issue in favor of the Plaintiffs. Otherwise, you should find for the Defendant**.**

*16.60 (Civ) Duty to Warn* – Causation, When "Heeding Presumption" for Plaintiff is Rebutted*, Pa. SSJI (Civ), §16.60 (2016)*

| Modified: _____ | Unchanged: X |

| **Plaintiffs' Proposed Jury Instruction No. 24 - Duty to Provide a Post Sale Duty to Warn** | **Electrolux's Proposed Jury Instruction No. 6 - Strict Liability – Post-Sale Duty to Warn** |
|---|---|
| A manufacturer is required to provide a post-sale warnings to consumers of known dangers associated with its product, even if those dangers were not known to the manufacturer at the time of sale of the product. *Walton v. Avco,* 610 A.2d 454, 459 - 460 (Pa. 1992) | The duty to provide an adequate product warning can arise even after the product is sold, under certain circumstances. First, as you were instructed earlier, the product's unreasonably dangerous condition must have existed at the time the product left Electrolux's control.  Second, the potential harm must be both substantial and preventable. Third, Electrolux must have learned about the risk created by the product's unreasonably dangerous condition sufficiently before Allstate's subrogors suffered harm so that Electrolux could take reasonable steps to warn reasonably foreseeable users about the risk. Fourth, a reasonable and practical means must have existed so that Electrolux's post-sale warning would have been received and acted upon, either by Allstate's subrogors, or by someone else in a position to act, in a way that would have prevented the harm to Allstate's subrogors. |
|  | Factors you may consider in deciding if a post-sale warning should have been given include the nature of the product, the nature and likelihood of harm, the feasibility and expense of issuing a warning, whether the claimed defect was repairable, whether the product was mass-produced, or alternatively sold in a small and distinct market, whether the product's users could be easily identified and reached, and the likelihood that the product's purchases would be unaware of the risk of harm. |
|  | "Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.35* |

| **Plaintiffs' Proposed Jury Instruction No. 25 – Factual Cause – Product Liability** | **Electrolux's Proposed Jury Instruction No. 8 – Strict Liability – Factual Cause** |
|---|---|
| If you find that the product was defective, the Defendant is liable for all harm caused to the Plaintiffs by such defective condition.   A defective condition is the factual cause of harm if the harm would not have occurred absent the defect.  [In order for the plaintiff to recover in this case, the defendant's conduct must have been a factual cause of the accident.] | If you find that the product was defective, the defendant is liable for all harm caused to Allstate's subrogors by such defective condition. A defective condition is the factual cause of harm if the harm would not have occurred absent the defect. In order for Allstate to recover in this case, the defendant's conduct must have been a factual cause of the fires. |
| *16.70   (Civ)   Factual   Cause--Products Liability,  Pa.  SSJI  (Civ),  §16.70  (2016)* (modified) | "Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.70* |

## Plaintiffs' Proposed Jury Instruction No. 26 - Strict Liability – General Rule - Strict Liability Responsibility Nondelegable

A Defendant in a strict liability case who puts a defective product into the market remains liable to the user or consumer, despite the foreseeable conduct, negligent or otherwise, of others, for the harm created by the product as a result of the defect.

*16.100 (Civ) Strict Liability Responsibility Nondelegable, Pa. SSJI (Civ), §16.100 (2016)*

| Modified: _____ | Unchanged:  X |
|---|---|

**Plaintiffs' Proposed Jury Instruction No. 27 - Strict Liability – Defenses not available in Strict Liability Claims**

*Knowledge of Defect*

A manufacturer is presumed to have known at all relevant times the facts that had been revealed about the harmful characteristics or consequences of the product's design, even if the manufacturer did not know those facts.   If you find that it would not be reasonable for a manufacturer with such presumed knowledge to have put the product on the market without changing the design, then the product is defective.

*Negligence of Plaintiff*

In determining whether a product is defective or a factual cause of the Plaintiffs' harm, you may not consider any negligence of the dryer users.  Under Pennsylvania law, a manufacturer is not permitted to defend against this claim by asserting that the product users were at fault.

*Industry Customs or Standards*

A manufacturer cannot escape a finding of defect because the product met industry customs or standards on safety.

*16.122 (Civ) Defenses not Available in Strict Liability Claims, Pa. SSJI (Civ), §16.122 (2016)*

| Modified: _____ | Unchanged:  X |

**Electrolux's Proposed Jury Instruction No. 9 – Products Liability – (Multiple Possible Contributing Causes)**

In this case you must evaluate evidence of several possible causes, including a defective condition in the defendant's product, to decide which, if any, are factual causes of the Allstate's harm. A possible cause becomes a legal cause of Allstate's harm when it was a substantial factor in bringing that harm about. In order for Allstate to recover in this case, the defective condition in the defendant's product thus must have been a substantial factor in bringing about Allstate's harm. More than one substantial factors may combine to bring about Allstate's harm.

You should use your common sense in determining whether each possible cause was a substantial factor in bringing about Allstate's harm. A substantial factor must be an actual real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with Allstate's harm.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.80*

**<u>Electrolux's Proposed Jury Instruction No. 10 – Strict Liability – State of the Art Evidence</u>**

Compliance with Product Safety Statutes or Regulations

You have heard evidence that the subject dryers complied with the industry standards – ANSI Z21.5.1 (gas dryers) and UL 2158 (electric dryers). While compliance with those industry standards is not conclusive, it is a factor you should consider in determining whether the design of the product was defective so as to render the product unreasonably dangerous.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.122(2)*

**<u>Electrolux's Proposed Jury Instruction No. 11 – Strict Liability – State of the Art Evidence</u>**

Compliance with Industry Standards

You have heard evidence that the subject dryers complied with the design and safety customs or practices in the dryer industry. While compliance with these industry standards is not conclusive, it is a factor you should consider in determining whether the design of the product was defective so as to render the product unreasonably dangerous.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.122(3)*

**Electrolux's Proposed Jury Instruction No. 12 - Strict Liability – Plaintiff Conduct Evidence**

You have heard evidence about the manner that Allstate's subrogors used the subject dryers. You may consider this evidence as you evaluate whether the product was in a defective condition and unreasonably dangerous to the user. However, the failure of Allstate's subrogors to exercise care while using a product does not require your verdict to be for Electrolux.

If the evidence is that Allstate's subrogors' conduct was "highly reckless" and creates a jury question whether this conduct could be "a sole or superseding cause" of Allstate's harm, then the jury should also be instructed on that conduct as a superseding cause.

"Products Liability Suggested Standard Jury Instructions Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)", Pennsylvania Defense Institute, 2018. *§16.122(4)*

**Electrolux's Proposed Jury Instruction No. 13 – Defense of Assumption of Risk**

If any of Allstate's subrogors knew of the specific defect eventually causing their injury and voluntarily proceeded to use the product with knowledge of the danger caused by this specific defect, they are barred from recovery. They are not barred from recovery, however, if they did not actually discover the defect prior to the accident or failed to recognize and appreciate its danger, regardless of what other persons might have done in the same circumstances. Nor are they barred from recovery by any negligence on their part. Voluntary exposure to a dangerous situation does not bar recovery, unless the danger known and recognized by Allstate's subrogors was that caused by the specific defect eventually causing their injury. It is the defendant's burden to prove that Allstate's subrogors actually knew of the defect, appreciated its danger, and voluntarily chose to encounter it.

*Pa. SSJI (Civ) § 16.130* (modified)

**Electrolux's Proposed Jury Instruction No. 14 – Affirmative Defense: Substantial Change**

A manufacturer is not liable for defective conditions created by substantial changes in the product occurring after the product has been sold.  The test to determine if an alteration to a product is a "substantial change" is whether the manufacturer could have reasonably expected or foreseen such an alteration.  To succeed on this defense, Electrolux must prove that:

1. The subject dryers were altered after they left Electrolux's possession; and

2. The alteration was so extraordinary that it was not reasonably foreseeable to Electrolux, and therefore was the only factual cause of Allstate's subrogors' harm.

*Pa. SSJI (Civ) § 16.120* (modified)

**Electrolux's Proposed Jury Instruction No. 15 – Affirmative Defense: Use of Product in Unintended Way**

A manufacturer is not liable for harm caused by the use of the product in a way that was unintended and unforeseeable.

To succeed in this defense, Electrolux must prove that:

1.   The subject dryers were used in an unintended way; and

2.   The use was so extraordinary that it was not reasonably foreseeable to Electrolux, and therefore should be considered as the sole cause of Allstate's harm.

*Pa. SSJI (Civ) § 16.121* (modified)

**<u>Electrolux's Proposed Jury Instruction No. 16</u>**

Under Pennsylvania law, <u>Allstate's subrogors</u> have a duty to protect themselves from "careless exposure . . . to danger or  . . . failure to exercise reasonable diligence for [their] own protection" *Columbia Med. Group, Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184, 1192 (Pa. Super Ct. 2003).

**Electrolux's Proposed Jury Instruction No. 17**

"[A] material change in the product severs the chain of causation where the plaintiff would not have been injured had the product remained in its unaltered state."  *Davis v. Berwind Corp.*, 433 Pa. Super. 342 (Pa. Super. 1994) (quoting Restatement (Second) of Torts, Section 402A, comment g).

**<u>Electrolux's Proposed Jury Instruction No. 18</u>**

"Where a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition . . . ." *Davis v. Berwind Corp.*, 433 Pa. Super. 342, 356 (Pa. Super. 1994) (quoting Restatement (Second) of Torts, Section 402A, comment j.

**Electrolux's Proposed Jury Instruction No. 19 - Burden of Proof and Preponderance of Evidence**

Under the law, Allstate has the burden of proving their claims.

[T]his is a civil case, not a criminal case. The burden of proof in a civil case is different from the burden of proof in a criminal case. In a civil case, Allstate must prove their claims by a legal standard called a "preponderance of the evidence." Preponderance of the evidence means that a fact is more likely true than not.

Think about the scales of justice or an old-fashioned balance scale with a pan on each side to hold objects. Imagine using the scale as you deliberate in the jury room. Place all the believable evidence favorable to the plaintiff in one pan. Place all the believable evidence favorable to the defendant in the other. If the scales tip, even slightly, to Allstate's side, then Allstate has met their burden of proving that fact. If, however, the scales tip even slightly on Electrolux's side, or if the two sides of the scale balance equally, Allstate has not met their burden of proof.

Allstate has asserted claims of strict liability (Count I) and negligence (Count II) against Electrolux.  In regard to the negligence cause of action:

Allstate has the burden of proving that each of the following is more likely true than not:

1. Electrolux was negligent; and

2. Electrolux's negligence was a factual cause in bringing about the [damages].

Allstate also has the burden of proving the extent of damages caused by the Electrolux's alleged negligence.

*Pa. SSJI (Civ), §5.00* (modified)

**<u>Plaintiffs' Proposed Jury Instruction No. 28 – Negligence – Issues in the Case</u>**

The Plaintiffs claim they [he] [she] were [was] harmed, injured and damaged by Defendant's negligent conduct.

Specifically, the Plaintiffs contend that Defendant owed a duty to the dryer users to design a safe dryer, free from latent and hidden fire hazards. Plaintiffs' contend that such a duty required Defendant to adhere to the hierarchy of safe engineering and design during the development and production of the subject dryers.  Plaintiffs contend that Defendant breached its duty by failing to design the hazard of internal lint ignition from the product notwithstanding having previously identified the hazard and knowing how to build a safer dryer with the same functionality and at the same cost.  Plaintiffs contend that Defendant further breached its duty by failing to build a dryer capable of internal lint fire containment, notwithstanding actual knowledge that such a design was feasible, would eliminate the internal lint fire hazard presented by the ordinary use of its dryers and that such a design change was effectively cost-neutral years before the subject dryer was assembled and sold.

Plaintiffs have the burden of proving their [his] [her] claim.

Defendant denies Plaintiffs' claim.  In addition, as a defense, Defendant claims that  dryer users  were  negligent and  dryer users'  own negligence was a factual cause in bringing about Plaintiffs' own harm, injury or damage.  Defendant has the burden of proving this defense.

The issues you must decide, in accordance with the law as I give it to you, are:

1. Was  Defendant negligent?

2. Was Defendant's negligent conduct a factual cause in bringing about the harm, injury or damage to Plaintiffs.

3. Were the dryer users also negligent?

4. Were the dryer users negligent conduct also a factual cause in bringing about their own harm,

injury or damage?

*13.00 (Civ) Negligence – Issues in the Case, Pa. SSJI (Civ), §13.00 (2016)*

| | |
|---|---|
| Modified: X | Unchanged: _____ |

**<u>Plaintiffs' Proposed Jury Instruction No. 29 – Negligence – General Principle</u>**

In this case, you must decide whether Defendant was negligent. I will now explain what negligence is.

A person must act in a reasonably careful manner to avoid injuring, harming or damaging others.

The care required varies according to the circumstances and the degree of danger at a particular time.

You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case.

A person who does something a reasonably careful person would not do under the circumstances is negligent.

A person also can be negligent by failing to act.

A person who fails to do something a reasonably careful person would do under the circumstances is negligent.

You may find Defendant was negligent under the facts and circumstances of this case if you conclude that a reasonably careful manufacturer would not have designed and distributed the dryer as designed.

*13.10 (Civ) Negligence, Pa. SSJI (Civ), §13.10 (2013)*

| Modified: <u>X</u> | Unchanged:  _____ |
|---|---|

## **Plaintiffs' Proposed Jury Instruction No. 30 – Negligence**

As to what is "reasonable conduct" in connection with this case, you should consider that dryer manufacturers and sellers, such as Defendant, are held to the standard of experts in the design of their product.  In this regard, Defendant is required to know all of the dangerous features of its product.  Thus, Defendant's failure to have the knowledge necessary to make its product safe may constitute negligence.

*Guffie v. Erie Strayer Co., 350 F.2d 378, 381 (3rd Cir. 1965); (citing* 2 Harper & James, The Law of Torts (1956), § 28.4; Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 847 (1962)).

## **<u>Plaintiffs' Proposed Jury Instruction No. 31 – Negligence –Reckless Conduct</u>**

The Plaintiffs claims the Defendant's conduct was not only negligent, but was reckless.

Reckless conduct is significantly worse than negligent conduct.

The risk that harm will be caused by conduct that is reckless is higher than the risk that harm will be caused by conduct that is negligent. A person can be reckless by acting or by failing to act.

To prove that Defendant was reckless, the Plaintiffs must prove the following:

[1. The Defendant knew a danger exists and;

2. The Defendant intentionally acted or failed to act in conscious disregard of the likelihood of harm to others.

Alternatively,]

1. <u>The Defendant should have known harm was certain to occur or reasonably certain to occur; and</u>

2. The Defendant intentionally acted or failed to act in conscious disregard of the likelihood of harm to others.

*13.60 (Civ) Reckless Conduct, Pa. SSJI (Civ), §13.60 (2012)*

| Modified: _____ | Unchanged: <u>X</u> |
|---|---|

**Electrolux's Proposed Jury Instruction No. 20 – Plaintiff's Contributory Negligence**

As a defense, Electrolux claims that Allstate's subrogors' own negligence was a factual cause of their injuries.  Electrolux has he burden to prove the following:

1. that Allstate's subrogors were negligent; and

2. that Allstate's subrogors' negligence was a factual cause of their injury.

*Pa. SSJI (Civ) 13.210* (modified)

**<u>Electrolux's Proposed Jury Instruction No. 21 – Uncalled Witness Equally Available</u>**

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified had they been called. Their absence should not affect your judgment in any way.

*Modern Federal Jury Instruction, 75-4* (unmodified)

**<u>Electrolux's Proposed Jury Instruction No. 22 – Inferences</u>**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

*3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.)* (unmodified)

**Electrolux's Proposed Jury Instruction No. 23 – Inference Against Defendant Does Not Shift Burden of Proof**

The mere existence of an inference against the Defendant does not relieve Allstate of their burden of establishing their case by a preponderance of the evidence. If Allstate is to obtain a verdict, you must still believe from the credible evidence that Allstate has sustained the burden cast upon them. If they have failed, then your verdict must be for Electrolux. If you should find that all of the evidence is evenly balanced, then Allstate has failed to sustain the burden of proof and your verdict should be for Electrolux.

If and only if you determine, after carefully weighing all the evidence, that the facts favor Allstate by the standard I have articulated, then they have met the burden of proof.

*Modern Federal Jury Instruction 75-2* (modified)

**Electrolux's Proposed Jury Instruction No. 24 – Adverse Inference**

Almodovar

In connection with the Almodovar matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the flexible foil venting and the exterior vent hood.  This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux.  You are permitted to infer that the destroyed evidence, namely the flexible foil venting and the exterior vent hood, would have revealed facts unfavorable to the position of Allstate in this matter.

Bullene

In connection with the Bullene matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the exterior vent hood.  This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux.  You are permitted to infer that the destroyed evidence, namely the exterior vent hood, would have revealed facts unfavorable to the position of Allstate in this matter.

Gray

In connection with the Gray matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the entire permanent venting system.  This evidence was destroyed by Allstate and not made available for inspection and testing by Defendant.  You are permitted to infer that the destroyed evidence, namely the permanent venting system, would have revealed facts unfavorable to the position of Allstate in this matter.

Quinn

In connection with the Quinn matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically the entire flexible foil venting system and the exterior vent hood.  This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux.  You are permitted to infer that the destroyed evidence, namely the entire flexible foil venting system and the exterior vent hood, would have revealed facts unfavorable to the position of Allstate in this matter.

Venbrux

In connection with the Venbrux matter, you have heard testimony about evidence that was under the control of Allstate after the fire; specifically portions of the rigid venting system and the metal vent hood.  This evidence was destroyed by Allstate and not made available for inspection and testing by Electrolux.  You are permitted to infer that the destroyed evidence, namely portions of the rigid venting system, would have revealed facts unfavorable to the position of Allstate in this matter.

## **Plaintiffs' Proposed Jury Instruction No.  33 – Damages**

The fact that I am instructing you about damages does not imply any opinion on my part as to whether damages should be awarded.

If you find that Defendant is liable to the Plaintiffs, you must then find an amount of money damages you believe will fairly and adequately compensate the Plaintiffs for all the physical and financial injury they have sustained as a result of the occurrence.   The amount you award today must compensate the Plaintiffs completely for damages sustained. [in the past, as well as damages the Plaintiffs will sustain in the future.]

7.00 (Civ) Damages, Pa. SSJI (Civ), § 7.00 (2013)

| Modified:  X | Unchanged:  _____ |
|---|---|

## **Plaintiffs' Proposed Jury Instruction No. 34 – Damages**

If you conclude that Defendant is liable to the Plaintiffs based on principles of strict liability and negligence, you need to decide the issue of damages.

The paramount rule in assessing damages is that every person unjustly damaged should at least be fully compensated for the damage he or she sustains, and the function of compensatory damages is primarily to shift the loss from an innocent party to one who is at fault. *Spangler v. Helm's New York Pittsburgh Motor Exp.,* 396 Pa. 482, 153 A.2d 480 (1959); *Esmond v. Liscia,* 209 Pa. Super. Ct. 200, 224 A.2d 793 (1966).

The desired goal of the law is to place the injured party in the same position it occupied before the injury. *Hahn v. Atlantic Richfield Company,* 625 F.2d 1095, 1104 (3d Cir. 1980).

**Plaintiffs' Proposed Jury Instruction No. 35 – Damages**

The objective of awarding damages in a civil action is based on just compensation, indemnity or reparation for the loss or injury sustained by the claimant.  Tort law attempts to place the injured party in the same position he occupied before the injury. *Hahn v. Atlantic Richfield Company,* 625 F.2d 1095, 1104 (3rd Cir. 1980). Damages should be equivalent to the harm inflicted.  *Jones v. Carborundum Co.,* 515 F. Supp. 559 (W.D. Pa. 1981).

## **Plaintiffs' Proposed Jury Instruction No. 36 – Damages**

I instruct you that under Pennsylvania law, evidence in support of a claim for damages is sufficient if it affords a reasonably fair basis for calculating the plaintiffs' loss. The law does not require that proof in support of claims for damages must conform to the standard of mathematical exactness. *Smail v. Flock,* 407 Pa. 148, 154; 180 A.2d 59, 62 (1962).(Citations omitted).

**<u>Plaintiffs' Proposed Jury Instruction No.  37 – Damages</u>**

It is a well-accepted principle of law that proof of damages may be based solely upon a reasonable estimate of the loss. *Burgis v. Philadelphia County,* 169 Pa. Super. 23, 26-27; 82 A.2d 561, 564  (Pa. Super. 1951).

**<u>Plaintiffs' Proposed Jury Instruction No. 38 – Damages</u>**

You are instructed that the Plaintiffs, as the owner of the damaged property, consisting of their dwelling and the personal property located in the premises, are competent witnesses to testify through its representatives, as to the value of the property that was damaged or destroyed by fire. *Watsontown Brick Company v. Hercules Powder Company,* 265 F. Supp. 268, 275 (M.D. Pa. 1967).

**Plaintiffs' Proposed Jury Instruction No.  39 – Damages – Measure of Damages to Real Property – Repairable Damages**

I now instruction on the law for the proper measure of damages to the Plaintiffs' real property.

In an action such as this, involving damage to the Plaintiffs' home, I charge you that the measure of damages to the Plaintiffs is the cost of repair or restoration of the fire damage to its home, which resulted from the allegedly wrongful conduct of Defendant.  *Rabe v. Shoenberger Coal Co.,* 213 Pa. 252, 256, 62 Atl. 854, 855 (1905); *Lobozzo v. Adam Eidemiller,* Inc., 437 Pa. 360, 263 A.2d 432, 437 n.6 (1970).

## **Plaintiffs' Proposed Jury Instruction No.  42 – Damages**

The paramount rule in assessing damages is that every person unjustly damaged should at least be fully compensated for the damage he or she sustains, and the function of compensatory damages is primarily to shift the loss from an innocent party to one who is at fault. *Spangler v. Helm's New York Pittsburgh Motor Exp.,* 396 Pa. 482, 153 A.2d 480 (1959); *Esmond v. Liscia,* 209 Pa. Super. Ct. 200, 224 A.2d 793 (1966). The desired goal of the law is to place the injured party in the same position it occupied before the injury. *Hahn v. Atlantic Richfield Company,* 625 F.2d 1095, 1104 (3d Cir. 1980).

**Electrolux's Proposed Jury Instruction No.  25 – Damage to Property**

If you find for <u>Allstate</u> in accordance with these instructions, then you must determine the damage to which <u>Allstate is</u> entitled for injury to their <u>subrogors'</u> property.  As compensation for damages to that property, <u>Allstate is</u> entitled to recover the lesser of two figures arrived at as follows:

One figure is the reasonable expense of necessary repair of the property plus the difference in the fair market value of the property immediately before the occurrence and the fair market value after the property is repaired.

The other figure is the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

You may award for property damages the lesser of these two figures only.

*3 Fed. Jury Prac. & Instr. § 129:01 (6th ed.)* (modified)

**Electrolux's Proposed Jury Instruction No.  26 – Measure of Damage to Property**

       The general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability, and in situations in which the harm is reparable, damages are assessed according to the lesser of the cost of repair or the market value of the affected property.  *See Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 587 Pa. 236, 246, 898 A.2d 590 (Pa. 2006).  Calculation of the decrease in fair market value takes into account depreciation.  *See Id.* at 598.

**Electrolux's Proposed Jury Instruction No.  27 – Measure of Damage to Real Property**

"Fair market value" is the price at which a fully informed, willing owner would have voluntarily sold and a fully informed willing buyer would have voluntarily bought the property in question.

*3 Fed. Jury Prac. & Instr. § 129:02 (6th ed.).*  See *United States v. Crown Equipment Corp.*, 86 F.3d 700, 708 (7th Cir.1996) (fair market value is that sum of money property would have brought if sold by owner willing but not required to buyer willing but not required to buy).

## **Plaintiffs' Proposed Jury Instruction No.  43 – Punitive Damages**

The Plaintiffs have also asserted a claim for punitive damages.

If you find that the conduct of Defendant was outrageous, you may award punitive damages, as well as any compensatory damages in instructed you about previously, in order to punish Defendant for its conduct and to deter Defendant and others from committing similar acts.

A person's or corporation's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others.

*8.00 (Civ) Punitive Damages — General Instructions, PA. SSJI (Civ), § 8.00 (2013).*

| Modified: _____ | Unchanged: <u>X</u> |
|---|---|

**Plaintiffs' Proposed Jury Instruction No. 44 – Punitive Damages**

If you decide that the Plaintiffs are entitled to an award of punitive damages, it is your job to fix the amount of such damages. In doing so, you may consider any or all of the following factors:

1. the character of Defendant's act,

2. the nature and extent of the harm to the Plaintiffs that Defendant caused or intended to cause; in this regard you may include the Plaintiffs' trouble and expense in seeking to protect their interests in legal proceedings and in this suit,

3. the wealth of Defendant insofar as it is relevant in fixing an amount that will punish it, and deter it and others from like conduct in the future.

It is not necessary that you award compensatory damages to the Plaintiffs in order to assess punitive damages against Defendant, as long as you find in favor of the Plaintiffs and against Defendant on the question of liability.

The amount of punitive damages awarded must not be the result of passion or prejudice against Defendant on the part of the jury. The sole purpose of punitive damages is to punish Defendant's outrageous conduct and to deter Defendant and others from similar acts.

*8.20 (Civ) Punitive Damages — Amount of Award, PA. SSJI (Civ), § 8.20 (2013)*

| Modified: _____ | Unchanged: X |
|---|---|

**Electrolux's Proposed Jury Instruction No.  28 – Election of foreperson; duty to deliberate; communications with court; cautionary; unanimous verdict; verdict form**

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember you should not tell anyone—including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law I have given to you in these instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. *[The form reads: [quote]].* You will take this form to the jury room, and when each of you

has agreed on the verdict[s], your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

*3 Fed. Jury Prac. & Instr. § 103:50 (6th ed.)*