**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY; ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY | : NO. 5:16-cv-04276-EGS<br>:<br>:<br>:<br>: |
| v. | :<br>: |
| ELECTROLUX HOME PRODUCTS, INC. | : JURY TRIAL DEMANDED<br>: |

**DEFENDANT ELECTROLUS HOME PRODUCTS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STAY TRIAL**

Defendant Electrolux Home Products, Inc. ("Electrolux"), through its counsel, files the within Memorandum of Law in Support of its Motion to Stay Trial requesting that this Honorable Court issue an Order staying trial in this matter until the United States government reopens.

**I.      RELEVANT FACTUAL BACKGROUND**

**A.      Congress requires federal courts to take measures to lessen the adverse financial impact of federal jury service.**

Congress has recognized that service on a federal jury has adverse financial consequences for the average juror—*i.e.,* the cost of the juror's travel and, in some instances, lodging away from home, as well as the loss of income caused by missing work to serve. Congress has acted to minimize those adverse financial consequences requiring federal courts to pay jurors for their service and reimburse them for the expenses the jurors incur as a result of that service. For example, 28 U.S.C. § 1871 mandates that "[g]rand and petit jurors in district courts . . . shall be paid the fees and allowances set forth" in that section, which include:

- an attendance fee of $50 per day for "actual attendance" at trial, and for the time the juror spends traveling to and from the place of trial;

- where a juror is required to attend a trial that is longer than 10 days, an additional fee in the discretion of the trial judge;

- a travel allowance;

- toll charges;

- parking charges;

- a subsistence allowance that cores the cost of lodging and meals "when an overnight stay is required at the place of holding court and for the time necessarily spent in traveling to and from the place of attendance if an overnight stay is required"; and

- in certain instances, the cost of public transportation to the court.

28 U.S.C. § 1871(b),(c), (d), (f).

Consistent with Congress's mandate that a juror should not suffer adverse financial consequences as a result of jury service, this Court has adopted policies intended to minimize those consequences. As set forth in this Court's Petit Juror Instructions (available at http://www.paed.uscourts.gov/documents/jury/Petit%20Juror%20Instructions.pdf):

> Welcome to jury service in the United States District Court for the Eastern District of Pennsylvania. Your participation in the jury system is vital to the American system of justice and is one of the most important privileges of being a U.S. citizen.
>
> * * *
>
> **JUROR FEES:** Jurors are paid an attendance fee of $50.00 per day as well as round trip mileage for travel to and from the U.S. Courthouse. Jurors will also be reimbursed for any parking and toll expenses incurred upon presentation of validated receipts. Jurors parking at a meter or parking facility which does not issue a receipt can be reimbursed up to $5.00 with a *Certification Form* available at juror orientation.
>
> Jurors residing more than 50 miles from of the U.S. District Courthouses may stay overnight, either prior to, or after being selected as a juror. The Court pays a per diem allowance (to cover meals, parking, and lodging) in addition to your daily attendance fee. If you are staying at a hotel, you may ask for the Government

>Rate. Hotels are not required to give you the Government rate, but
>many of the hotels will do so.

Notably, the Petit Juror Instructions also remind a potential juror that, under 28 U.S.C. § 1866(g), failure to appear for jury service without good cause for that failure may result in: a fine of up to $1,000; imprisonment of up to three days; community service; or any combination thereof. (*Id*. at 2.)

### B.    Jurors in this case will be required to participate in a lengthy, complicated trial without the benefit of congressionally-mandated measures that protect jurors from the adverse financial consequences of jury service.

There can be no doubt that the members of the jury in this case will likely serve for several weeks. As this Court is aware, this case arises out of eight separate dryer fires involving Electrolux-manufactured dryers. Allstate consolidated these eight claims into a single complaint and this Court denied Electrolux's request to separate the claims for individual trials.

The resulting trial of the eight claims will be lengthy and complex. Allstate has identified over 770 trial exhibits. (*See* Ex. A to Allstate's Pretrial Memo. (ECF No. 129-1).) Electrolux's list consists of 343 exhibits. (*See* Electrolux's Pretrial Memo. (ECF No. 140) at 6-22.) The parties have identified nearly 90 potential witnesses. (*See* Allstate's Pretrial Memo. (ECF No. 129) at 5-11; Electrolux's Pretrial Memo. (ECF No. 140) at 3-6.) Each party has predicted that it will take ***7 to 10 days*** to complete its side of the case, and Allstate has indicated that it anticipates trial will take ***14 to 21 trial days***. (*See* Allstate's Pretrial Memo. (ECF No. 129) at 11; Electrolux's Pretrial Memo. (ECF No. 140) at 22.) In sum, a juror in this case can reasonably expect to spend three to four full workweeks serving on the jury—during which time that juror will be unable to work.

Further, it is likely that many of the jurors in this case will reside more than 50 miles from the federal courthouse and, thus, will be entitled to the cost of their lodging. This Court's jurisdiction covers nine counties in Pennsylvania. *See* 28 U.S.C. § 118(a). Because the members

of the jury must be drawn from "a fair cross section of the community in the district . . . wherein the court resides," 28 U.S.C. § 1861, the jury pool will necessarily consist of individuals who reside more than 50 miles from Easton, where the trial of this case will be conducted.

In sum, a trial that is likely to last three or four full weeks will wreak significant adverse financial consequences on the members of the jury. In addition to foregoing any income they would normally earn during that period of time, a member of the jury in this case will incur considerable expenses—*e.g.,* mileage, lodging,[1] parking, meals, tolls, the cost of public transportation. Normally, the impact of those expenses would be ameliorated by the financial assistance required by Congress and implemented by this Court's procedures.

Not so in this case. Because there has been a lapse in funding, the federal government is currently shutdown. That shutdown has drawn on for over one month, and there does not appear to be an end in sight. Although the federal courts have been able to continue operating during the shutdown due to court fee balances and other sources of funding, on January 16, 2019, the United States Courts announced that those sources of funding are likely to run out on January 25, 2019. *See Judiciary to Continue Funded Operations Until Jan. 25*, United States Courts, https://www.uscourts.gov/news/2019/01/16/judiciary-continue-funded-operations-until-jan-25 (last visited Jan. 21, 2019).

This Court recently informed the parties that it intends to empanel a jury in this case despite the shutdown. As this Court acknowledged, as a result of the shutdown, the members of the jury

---

[1] For example, the Government Rate for hotels in Easton during January and February 2019 is $105 per night. *See FY 2019 Per Diem Rates for Pennslylvania*, General Services Administration, https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=PA&fiscal_year=2019&zip=&city= (last visited Jan. 21, 2019).

will not immediately receive the financial assistance mandated by Congress and this Court's own procedures. Instead, they will be expected to bear the expense of serving on a jury in a multi-week trial on their own, without any indication when—or if—they will receive their attendance fees, or be reimbursed for the expenses they will necessarily incur as a result of their service over weeks of trial.

## II.    ARGUMENT

### A.    A fair and impartial jury is the touchstone of a civil litigant's right to a fair trial.

The Seventh Amendment guarantees the right to a jury trial in civil cases. U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."). Importantly, "the impartiality of the jury . . . is inherent in the right of trial by jury and is implicit in the requirement of the Fifth Amendment that 'No personal shall . . . be deprived of life, liberty, or property, without due process of law.'" *Kiernan v. Van Schaik*, 347 F.2d 775, 778 (3d Cir. 1965) (quoting U.S. Const. amend V). A jury's impartiality is "[o]ne touchstone of a fair trial," *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984), that Congress and the courts have long labored to protect by ensuring that a civil litigant's jury is "capable and willing to decide cases solely on the evidence before it," *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Indeed, "[i]t is fundamental that every litigant who is entitled to trial by jury is entitled to an impartial jury, ***free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process***." *Haley v. Blue Ridge Transfer Co.*, 802 F.2d 1532, 1535 (4th Cir. 1986) (emphasis added).

**B.**     **The financial consequences of jury service in this case is an extraneous influence that will subvert the fact-finding process and render the trial fundamentally unfair.**

This Court must prevent any interference with the jury's partiality in this case. *See, e.g.*, *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."). A juror's concern about the adverse financial consequences of jury service is an "extraneous influence" that could compromise that juror's ability to "decide [the case] solely on the evidence." *Smith*, 455 U.S. at 217. Congress recognized as much when it passed laws that require federal courts to pay jurors attendance fees and to reimburse them for the expenses they incur as a result of service.

While this precise issue has not been addressed—not surprising, given the unprecedented length of the current shutdown—common sense dictates that jurors who are concerned about the financial impact of jury service are less likely to carefully consider the evidence and arguments, particularly in a lengthy trial. At least one federal judge, Ruben Castillo, Chief Judge of the United States District Court for the Northern District of Illinois, has said as much:

> Still, for defendants who are not detained, [Judge Castillo] predicted that defense lawyers would not want to go to trial because of another complication: There would not be any money to pay jurors until after the shutdown.
>
> "The dilemma that creates is then you have jurors who are making big decisions and may be unhappy about the circumstances of their jury service," Judge Castillo said. "I was a defense attorney. I would not want to proceed to trial under these circumstances because those circumstances can lead to rushed  judgments on the part of jurors that just want to get this done and over with. That's not fair."

Thomas Kaplan, *Federal Courts, Running Out of Money, Brace for Shutdown's Pain*, N.Y. Times (Jan. 18, 2019), https://www.nytimes.com/2019/01/18/us/politics/courts-money-government-

shutdown.html. Requiring jurors to serve on a complicated, multi-week trial without the benefit of the financial assistance required by law flies in the face of Congress's implicit recognition that such assistance is essential to a juror's ability to fairly and impartially consider the evidence in a case.

The prejudice predicted by Judge Castillo is particularly likely to occur in this case, and to Electrolux's detriment. Here, the jury will be tasked with deciding eight individual claims. But those individual claims will be presented in a single trial that could include the testimony of over 90 witnesses and the presentation of over 1,000 exhibits. The jury must wade through this voluminous amount of evidence to decide each claim on its own merit. That is a herculean task for a jury in the best of circumstances. But the jury in this case will not be operating under the best of circumstances. The jury in this case will be burdened with the very type of financial worries that Congress prohibits. As noted by Judge Castillo, a very likely result of those concerns will be a rush to judgment. Rather than carefully considering each claim on its merit, the jury in this case may very likely do whatever it takes "to get this done and over with," particularly after sitting through weeks of trial.[2]

This Court must take action now to prevent a fundamentally unfair trial in this case. The jury's freedom from extraneous influences is sacrosanct, and must be protected. The negative financial consequences of a lengthy term of jury service is precisely the type of extraneous influence that interferes with a jury's ability to consider a case on its merits. Requiring the jury to

---

[2] Another result of going forward with a jury trial under these circumstances is that it is likely that jurors who live farther away from the courthouse in Easton will request to be excused from service on the basis of hardship. As a consequence, the jury pool will consist of a greater number of jurors from counties closer to Easton. That result violates Electrolux's "right to [a] petit j[ury] selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

sit through a complicated, lengthy trial without the certainty of the financial assistance invites prejudice in the form of a rushed judgment that is not based on a careful consideration of each individual claim. But that prejudice is entirely preventable in this case. This Court need only to stay the trial until after the conclusion of the shutdown, when payment of the jurors' fees and expenses will be timely and guaranteed. On balance, any negative consequences of that delay are far outweighed by the prejudice that will result from trying this case while the shutdown is in effect.

## III.    CONCLUSION

For all of the foregoing reasons, Electrolux respectfully requests that this Honorable Court grant its Motion and issue an Order staying trial in this case until after the conclusion of the government shutdown.

Respectfully submitted,

NICOLSON LAW GROUP LLC

BY:        /s/ Melissa L. Yemma
           CHERYL M. NICOLSON, ESQ.
           Attorney I.D. No. 57422
           MELISSA L. YEMMA, ESQ.
           Attorney I.D. No. 92194
           Rose Tree Corporate Center II
           1400 N. Providence Road, Suite 6035
           Media, PA 19063
           (610) 891-0300
           nicolson@nicolsonlawgroup.com
           yemma@nicolsonlawgroup.com

           JONATHAN F. FECZKO, ESQ.
           Admitted *Pro Hac Vice*
           TUCKER ELLIS LLP
           950 Main Avenue, Suite 1100
           Cleveland, OH 44113
           (216) 696-3161
           jonathan.feczko@tuckerellis.com

*Attorneys for Defendant Electrolux*
*Home Products, Inc.*

DATE: <u>January 21, 2019</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY; ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY | : NO. 5:16-cv-04276-EGS<br>:<br>:<br>:<br>: |
| v. | : |
| | : JURY TRIAL DEMANDED |
| ELECTROLUX HOME PRODUCTS, INC. | : |

---

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum of Law in Support of Defendant, Electrolux Home Products, Inc.'s Motion to Stay Trial, was served electronically on the date stated below, upon the following:

Raymond E. Mack, Esquire
Patrick A. Hughes, Esquire
de Luca Levine, LLC
Three Valley Square
512 E. Township Line Road, Suite 220
Blue Bell, PA 19422

NICOLSON LAW GROUP LLC

BY:   /s/ Melissa L. Yemma
      CHERYL M. NICOLSON, ESQ.
      Attorney I.D. No. 57422
      MELISSA L. YEMMA, ESQ.
      Attorney I.D. No. 92194
      Rose Tree Corporate Center II
      1400 N. Providence Road, Suite 6035
      Media, PA 19063
      (610) 891-0300
      nicolson@nicolsonlawgroup.com
      yemma@nicolsonlawgroup.com

JONATHAN F. FECZKO, ESQ.
Admitted *Pro Hac Vice*
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
(216) 696-3161
jonathan.feczko@tuckerellis.com

*Attorneys for Defendant Electrolux Home
Products, Inc.*

DATE: January 21, 2019