**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY,** | **Case No.: 16-cv-04276 EGS** |

**Plaintiffs**

**v.**

**ELECTROLUX HOME PRODUCTS, INC.**

**Defendant**

## PLAINTIFFS' AMENDED PRE-TRIAL CONFERENCE MEMORANDUM

Plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate Vehicle & Property Insurance Company, (collectively "Allstate") by and through their attorneys, submit this Pre-Trial Conference Memorandum in accordance with the scheduling order and Local Rules.

## I.   BRIEF STATEMENT OF NATURE OF ACTION; BASIS ON WHICH JURISDICTION IS INVOKED

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because the Plaintiffs are citizens of a state diverse from Defendant and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

## II.   BRIEF STATEMENT OF THE FACTS

Over the course of four years, Allstate made payment on eight property damage claims arising from eight fires caused by Electrolux manufactured dryers.[1]  All of the subject dryers

---

[1] The fires occurred on the following dates and at the following locations:

are "ball-hitch" style dryers manufactured by Electrolux between 2003 and 2008. Allstate brought these eight claims against Electrolux in a single subrogation action sounding in strict products liability and negligence seeking compensatory and punitive damages.

The basic facts of this case are largely undisputed. The fires originated in dryers manufactured by Electrolux and severely damaged Plaintiffs' insureds' homes (and the Bullene business property) and destroyed much of their possessions. The fires began behind the dryers' rotating drum in a space hidden from view and inaccessible to users, where heat from the dryers' heating elements and/or gas flames ignited lint. Flaming lint was pulled through the drum by negative pressure and into contact with flammable plastic components beyond the lint screen. The plastics subsequently ignited and provided the fuel necessary for the fires to burn hot enough and long enough to breach cabinet containment and spread beyond the dryers itself.

The crux of this case is whether the dryers were distributed in a defective condition. As to that, the parties obviously disagree.

Plaintiffs contend Electrolux's ball-hitch dryers share common design defects. The perforated rear drum-wall permits combustible lint to migrate during the drying cycle into an

| | | |
|---|---|---|
| Brunilda and Anselmo Almodovar | March 24, 2016 | 1132 East 3rd Street, Bethlehem, PA |
| Rachel Bullene | December 20, 2014 | 1255 Woodbourne Road, Levittown, PA |
| Cynthia and Benson Christie | April 10, 2016 | 200 Lincoln Avenue, Gulph Mills, PA |
| Robert and Delores Gray | November 4, 2014 | 804 Parker Place, Glen Mills, PA |
| Napoleon and Elizabeth Gutierrez | December 6, 2012 | 449 South 43rd Street, Philadelphia, PA |
| Jennifer and Daniel Quinn | November 20, 2014 | 16 Jackson Street, Philadelphia, PA |
| Greg and Salome Venbrux | October 26, 2014 | 6653 Wilkins Avenue, Pittsburgh, PA |
| Marc and Lisa Weiss | October 16, 2015 | 10 Madison Court, Newtown, PA |

inaccessible space behind the drum and in close proximity to the gas or electric heat source. Unintended lint ignition occurs regularly behind the dryer's drum during normal use. Once ignited, the dryer's negative pressure can pull the flaming lint back through the perforated rear drum-wall, through the rotating drum and cause ignition of the dryer's contents or, as more often occurs, downstream plastic components located in the dryer's base (specifically, the dryer's lint trap assembly, front duct, blower assembly and impeller). Ignition of the dryer's plastics causes smoke and flames to escape the dryer cabinet, which, in turn, exacerbates the risk of death, serious bodily injury, and property damage.

Electrolux was aware of the defects associated with its ball-hitch dryers, yet distributed these dryers anyway. Electrolux (through its testing, engineering studies, warranty data, lawsuits and hundreds of fire investigations) actually knew that its dryers were substantially more likely to fail in a fire condition due to internal lint ignition and cause serious injury or damage than dryers built and sold by other manufacturers. Despite its knowledge about the defects associated with its dryers, Electrolux failed to adequately warn users about the dryers' unique fire hazards rendering the product defectively designed.

In addition to knowledge of the defects themselves, Electrolux knew how to remedy them. Each fire was entirely preventable. A "bulkhead" style design prevents lint from accumulating near the heat source and subsequently igniting. This was common knowledge in the industry since the 1960s. The bulkhead design has long been the dominant design style on the market. It accounted for over 70% of the market in 1994 and now accounts for an estimated 95% of the market.

Electrolux also knew how to construct dryers with non-combustible plastic component parts in order to contain a fire to the dryer cabinet but consciously chose not to. Electrolux

could have constructed its dryers with steel component parts. Electrolux's internal documents reflect that using a steel air duct significantly reduced the amount of smoke emitted during the fire containment test. Nonetheless, in reckless disregard for the safety of its users, Electrolux never switched to a steel air duct.

By the time the subject fires occurred, Electrolux had secretly settled hundreds of dryer defect claims involving internal lint ignition fires, abandoned the defective design, demolished the factory where the subject dryers were assembled, fired all of the employees involved with the subject dryers' design and "lost" or discarded important testing records (such as videos of fire containment testing conducted by Electrolux during the product's development in the 1990s).

## III.   DAMAGES

### A.   Compensatory Damages

Allstate's compensatory damages are $950,935.06, which represents the cost of restoring Allstate's insureds' real property to the pre-fire condition, cleaning and/or replacing at fair market value any personal property damaged and/or destroyed and any additional living expenses incurred as a result of the fire. All of the damages alleged are compensable under Pennsylvania law.

### B.   Punitive Damages

Allstate also seeks an award of punitive damages against Electrolux based on its demonstrated reckless indifference to the life and property for distributing the subject dryers notwithstanding actual knowledge of their defective nature and its subsequent failure to recall the dryers and/or otherwise issue post-sale warnings that would have prevented these fires from occurring. Electrolux's reckless conduct and defective product caused the damages alleged by

Allstate, like thousands of innocent consumers beforehand.

## IV.   WITNESS LIST

Allstate reserves the right to present testimony from any of the following witnesses:

1.   Brunilda Almodovar (liability and damages)
     1132 East 3rd Street
     Bethlehem, PA

2.   Anselmo Almodovar (liability and damages)
     1132 East 3rd Street
     Bethlehem, PA

3.   Rachel Bullene (liability and damages)
     6 McCarthey Drive
     Langhorne, PA

4.   Amanda Jackson (liability and damages)
     61 Midway Avenue
     Langhorne, PA

5.   Cynthia Christie (liability and damages)
     200 Lincoln Avenue
     Gulph Mills, PA

6.   Benson Christie, Sr. (liability and damages)
     200 Lincoln Avenue
     Gulph Mills, PA

7.   Benson Christie, Jr. (liability and damages)
     200 Lincoln Avenue
     Gulph Mills, PA

8.   Robert Gray (liability and damages)
     804 Parker Place
     Glen Mills, PA

9.   Napoleon (Gerry) G. Gutierrez (liability and damages)
     449 South 43rd Street
     Philadelphia, PA

10.  Elizabeth Gutierrez (liability and damages)
     449 South 43rd Street
     Philadelphia, PA

11.    Jennifer Quinn (liability and damages)
       136 Jackson Street
       Philadelphia, PA

12.    Daniel Quinn (liability and damages)
       136 Jackson Street
       Philadelphia, PA

13.    Greg Venbrux (liability and damages)
       6653 Wilkins Avenue
       Pittsburgh, PA

14.    Salome Venbrux (liability and damages)
       6653 Wilkins Avenue
       Pittsburgh, PA

15.    Marc Weiss (liability and damages)
       10 Madison Court
       Newtown, PA

16.    Lisa Weiss (liability and damages)
       10 Madison Court
       Newtown PA

17.    Michael Stoddard (Expert)  (liability)
       Wright Group, Inc.
       125 Rear Stanphyl Road
       Uxbridge, MA 01569

18.    William J. Vigilante, Jr., Ph.D., CPE (Expert) (liability)
       Vigilante Forensic
       200 Pembrooke Circle
       Phoenixville, PA 19460

19.    Brian Ripley (liability)
       c/o Cheryl Nicolson, Esquire

20.    Carl King (liability)
       c/o Cheryl Nicolson, Esquire

21.    Peter Silman (liability)
       c/o Chery Nicolson, Esquire

22.    Steve Joerger (liability)
       c/o Cheryl Nicolson, Esquire

23.   Shelley Clausen (liability)
c/o Cheryl Nicolson, Esquire

24.   Michael Ricklefs (liability)
c/o Cheryl Nicolson, Esquire

25.   Ali Zarghami (liability)
c/o Cheryl Nicolson, Esquire

26.   John Jergens (liability)
c/o Cheryl Nicolson, Esquire

27.   Dale Bowles (liability)
c/o Cheryl Nicolson, Esquire

28.   James Ruediger (liability)
c/o Cheryl Nicolson, Esquire

29.   Helen Haney (liability)
c/o Cheryl Nicolson, Esquire

30.   Gene Heskett (liability)
c/o Cheryl Nicolson, Esquire

31.   Fred Pauk (liability)
c/o Cheryl Nicolson, Esquire

32.   Barbara Linn (liability)
c/o Cheryl Nicolson, Esquire

33.   Chris Adams (liability)
c/o Cheryl Nicolson, Esquire

34.   Ed Anderson (liability)
c/o Cheryl Nicolson, Esquire

35.   Jay Bjerke (liability)
c/o Cheryl Nicolson, Esquire

36.   Scott Harder (liability)
c/o Cheryl Nicolson, Esquire

37.   Matthew Cribbs (liability)
c/o Cheryl Nicolson, Esquire

38.  Stephen Brown (liability)
     c/o Cheryl Nicolson, Esquire

39.  David Fuller (liability)
     c/o Cheryl Nicolson, Esquire

40.  Ron Masa (liability)
     c/o Cheryl Nicolson, Esquire

41.  Sharon A. Luarde, Esquire (liability)
     c/o Cheryl Nicolson, Esquire

42.  Shawn Hayes (liability)
     c/o Cheryl Nicolson, Esquire

43.  Danny Jerome (liability)
     c/o Cheryl Nicolson, Esquire

44.  Peter Patron (liability)
     c/o Cheryl Nicolson, Esquire

45.  Dean Brindle (liability)
     c/o Cheryl Nicolson, Esquire

46.  William Lange (liability)
     c/o Cheryl Nicolson, Esquire

47.  John Carroll (liability)
     c/o Cheryl Nicolson, Esquire

48.  Donna Edwards (liability)
     c/o Cheryl Nicolson, Esquire

49.  Daniel Ryherd (liability)
     c/o Cheryl Nicolson, Esquire

50.  Doug  Mechaelsen (liability)
     c/o Cheryl Nicolson, Esquire

51.  Mary Hall Mechaelsen (liability)
     c/o Cheryl Nicolson, Esquire

52.  Pratish Kadakia (liability)
     c/o Cheryl Nicolson, Esquire

53.   Paul Bertrand (liability)
      c/o Cheryl Nicolson, Esquire

54.   Bill Topper (liability)
      c/o Cheryl Nicolson, Esquire

55.   Al Rauber (liability)
      c/o Cheryl Nicolson, Esquire

56.   Tom Mulder (liability)
      c/o Cheryl Nicolson, Esquire

57.   Sean Myers (liability)
      c/o Cheryl Nicolson, Esquire

58.   Stephen Powers (liability)
      c/o Cheryl Nicolson, Esquire

59.   Kevin Torberg (liability)
      c/o Cheryl Nicolson, Esquire

60.   Dennis Clouse (liability)
      c/o Cheryl Nicolson, Esquire

61.   Terry Fisher or other Boscov's representative (liability)
      c/o Glenn Kimball, Esq.
      O'Connor Kimball LLC
      1500 JFK Blvd
      Philadelphia, PA 19102

62.   Mark Hughes, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Almodovar Claim)

63.   Carzell Wynn, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Bullene Claim)

64.   Dominic Campellone, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Christie Claim)

65.   Elizabeth Guano, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Christie Claim)

66.   Wendy McClure Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Christie Claim)

67.   Marcia Hartz, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Gray Claim)

68.   Cheryl Carr, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Gray Claim)

69.   Paul Bottiglieri, Allstate Property & Casualty Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Gutierrez Claim)

70.   Mark Meehan, Allstate Property & Casualty Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Gutierrez Claim)

71.   Charmaine Grove, Allstate Property & Casualty Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Gutierrez Claim)

72.   Fred Kiester, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Quinn Claim)

73.   Tracy Miller, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Quinn Claim)

74.   Nicole Montgomery, Allstate Vehicle & Property Insurance Company
      (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Venbrux Claim)

75.   Alan Duddy, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Weiss)

76.   Jeff Souza, Allstate Insurance Company (damages)
      c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
      (Weiss Claim)

77.   Yvette Sienkiewicz, Allstate Insurance Company (damages)
c/o Raymond Mack, Esquire / Patrick Hughes, Esquire
(Weiss Claim)

78.   Custodian of record for any person, entity or company involved in the
remediation of any of the property at issue.

Allstate reserve the right to amend and/or supplement this list of witnesses up to and including at the time of trial.  Allstate further reserves the right to call any witness to testify at the time of trial who has been identified by any other party to this case in pre-trial disclosures, discovery responses, memoranda or otherwise.

## V.   EXHIBIT LIST

Allstate's Exhibit List is attached hereto, and incorporated by reference, at Exhibit A. Allstate reserves the right to alter, amend and add additional exhibits up to and including at the time of trial.  Allstate further reserves the right to introduce into evidence any document and/or exhibit used and/or identified by any other party before and/or during trial at any time.

## VI.   ESTIMATED TRIAL TIME

Allstate estimates it will take approximately 7-10 days to present its case.    Allstate anticipates trial will last approximately 14-21 days.

## VII.   SPECIAL COMMENTS (LEGAL ISSUES, STIPULATIONS, AMENDMENT OF PLEADINGS, OTHER APPROPRIATE MATTERS)

### 1.   Burden Shifting to Defendant under the Risk Utility Test.

In *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 400 (Pa. 2014), the Pennsylvania Supreme Court strongly suggested that in circumstances where the risk-utility theory is used, the burden may be shifted to the defendant to demonstrate that an injury-producing product is not defective. *Tincher*, 104 A.3d at 408-09.  The *Tincher* Court modeled Pennsylvania's new product liability landscape after California's product liability law, which shifts the burden to a

defendant in a risk utility case once plaintiff has made a *prima facie* showing that his injury was caused by the product's defective design.  *See Barker v. Lull Eng'g Co., 573 P.2d 443 (1978); see also, Judicial Council of California Civil Jury Instructions, CACI No. 1204 (December 2015)*; See also, *Saller v. Crown Cork & Seal Co.*, 115 Cal.Rptr.3d 151, 162 (Cal. App. 2010) ("[o]nce the plaintiff has made a prima facie showing that his or her injury was caused by the product's defective design, the burden shifts to the defendant to establish that, in light of the relevant factors, the product is not defective").   While this issue is one of first impression since *Tincher*, shifting the burden to Electrolux in this matter is consistent with Pennsylvania's tort policy as well as the intent of the policies expressed in detail by the *Tincher* Court.

## 2.  **Substitution of Allstate's Insureds as Plaintiffs**

Allstate intends to file a motion to amend the caption to substitute its insureds' names as the Plaintiffs.  Allstate is now fully subrogated to the claims and interests of its insureds and is able to prosecute these claims in their names under the law.

## VIII.  **OBJECTIONS AS TO AUTHENTICITY**

Pursuant to Local Rule 16.1(d)(1)(a), Plaintiff objects to the authenticity of the following exhibits identified on Defendant's exhibit list.  Plaintiff reserves the right to raise additional objections to Defendant's exhibits at the time of trial.

D-22   Almodovar – UL Certificate of Compliance

D-46   Bullene – ANSI/CSA Certificate of Compliance

D-67   Christie – ANSI-CSA Certificate of Compliance

D-90   Gray – UL Certificate of Compliance

D-111  Gutierrez – ANSI/CSA Certificate of Compliance

D-130  Quinn -  – UL Certificate of Compliance

D-149  Venbrux – ANSI/CSA Certificate of Compliance

D-172  Weiss – ANSI/CSA Certificate of Compliance

D-183  Demonstrative Trial Exhibits – Frank Schwalje

D-184  File Materials Frank Schwalje

D-186  Demonstrative Exhibits – Kenneth Garside

D-189  Demonstrative Exhibits – J.P. Purswell, Ph.D.

D-190  File Materials of – J.P. Purswell, Ph.D.

D-192  Demonstrative Exhibits – John McHenry

D-195  Electrolux Dryer Production History 1988-2014

D-196  Electrolux-Laundry Division Production History – 1937-2007

D-197  Electrolux-AHAM Reported Data 2003-2009

D-198  "The Share of Market Picture"

D-199  "The Life Expectancy/Replacement Picture"

D-200  Industry Clothes Dryer US Shipment Data, AHAM Electric Dryers 2001-2005

D-201  Industry Clothes Dryer US Shipment Data, AHAM Electric Dryers 2005-2009

D-202  Industry Clothes Dryer US Shipment Data, AHAM Gas Dryers 2001-2006

D-203  Industry Clothes Dryer US Shipment Data, AHAM Gas Dryers 2005-2009

D-229  METI Decision

D-235  Thermal Degradation and Ignition Characteristics of Clothes Dryer Lint

D-236  FEMA's U.S. Fire Administration National Fire Data Center, Report (2002-2004), January 2007

D-237  FEMA's U.S. Fire Administration National Fire Data Center, Report (2008-2010), August 2012

D-238  NFPA- The U.S. Home Products Reports (2002)

D-239  NFPA – Home Fires Involving Clothes Dryers - 2009

D-240  NFPA- Home Fires Involving Clothes Dryers – 2012

D-241  NFPA – Home Fires Involving Clothes Dryers - 2017

D-242  Product Safety Tips:  Clean those lint traps

D-243  Analysis of Industry Data on Clothes Dryer Fire Incidents, August 2002 (AHAM)

D-244  Clothes Dryer Safety Fact Sheet (AHAM)

D-248  CPSC – 2002-2004 Residential Fire Loss Estimates – July 2007

D-249  CPSC – 2006-2008 Residential Fire Loss Estimates – July 2011

D-250  CPSC Safety Alert – Overheated Clothes Dryers – Publication 5022

D-251  CPSC – Evaluation of Using Indicators to Inform Consumers – June 2011

D-252  CPSC – Consumer Opinion Forum, Survey #3, September 2010

D-253  CPSC – Overheated Dryers can Cause Fires – June 2003

D-254  CPSC – Clothes Dryer Fires – Market Information – November 1998

D-255  CPSC – Data Summary Gas and Electric Dryers – May 1998

D-256  CPSC March 12, 1999 Memorandum

D-257  "Clothes Dryer Safety"

D-258  Clothes Dryer Fire Safety Outreach Materials

D-259  Fact Sheet 2006-2010 (NFPA)

D-260  Fact Sheet 2010-2014 (NFPA)

D-261  Dryers and Washing Machines (NFPA)

D-262  Compression effects on pressure loss in flexible HVAC ducts

D-263  ASHRAE Duct Design – Fluid Resistance

D-264  "Dryer Safety Tips"

D-265  "Prevent Dryer Fires"

D-266  Analyzing Lint Deposition Within Residence Electric Clothes Dryer

D-267  Assessing Electric Dryer Lint Fire Cause Scenarios

D-268  Video – Carl King June 8, 2012

D-269  Photographs – Carl King June 8, 2012

D-270  Dryer Drum Bearing Test Video

D-271  Dryer Drum Bearing Test Protocol

D-272  Dryer Drum Bearing Comparison Videos – Shop Vac

D-273  Dryer Drum Bearing Comparison Videos – Smoke Alarm

D-274  Webster City Lint Accumulation Testing Gas Dryer - Protocol

D-275  Webster City Lint Accumulation Testing Gas Dryer – Photographs (set up)

D-276  Webster City Lint Accumulation Testing Gas Dryer – Photographs (restricted)

D-277  Webster City Lint Accumulation Testing Gas Dryer – Photographs (normal)

D-278  Webster City Lint Accumulation Testing Gas Dryer – Data Logs (restricted)

D-279 Webster City Lint Accumulation Testing Gas Dryer – Data Logs (normal)

D-280  Webster City Lint Accumulation Testing Gas Dryer – End Data

D-281  Webster City Lint Accumulation Testing Electric Dryer – Protocol

D-282  Webster City Lint Accumulation Testing Electric Dryer – Photographs (set up)

D-283  Webster City Lint Accumulation Testing Electric Dryer – Photographs (restricted)

D-284  Webster City Lint Accumulation Testing Electric Dryer – Photographs (normal)

D-285  Webster City Lint Accumulation Testing Electric Dryer – Data Logs (restricted)

D-286  Webster City Lint Accumulation Testing Electric Dryer – Data Logs (normal)

D-287  Webster City Lint Accumulation Testing Electric Dryer – End Data

D-288  Back Pressure Chart

D-291  Front Seal Air Flowing Test

D-292  Front Seal Air Flow Testing Video

D-293  Front Seal Air Flow Testing Photographs

D-294  Dryer Vent Maintenance

D-295  Power Surges, Dirty Lint Traps and Other Hidden Home Dangers

D-296  Avoid Common Household Hazards

D-297  "Mayhem" Series Video


### de LUCA LEVINE LLC

BY:   *Patrick A. Hughes*

RAYMOND E. MACK, ESQUIRE
P.A. ID No. 91815
rmack@delucalevine.com
PATRICK A. HUGHES, ESQUIRE
P.A. ID No. 91415
phughes@delucalevine.com
Three Valley Square, Suite 220  Blue
Bell, PA  19422
215-383-0081 (Main) / 215-3383-0082 (fax)
ATTORNEYS FOR PLAINTIFFS


Date:  January 23, 2018

## CERTIFICATE OF SERVICE

I, Patrick A. Hughes, Esquire, hereby certify that a true and correct copy of Plaintiffs' Pre-Trial Conference Memorandum was served upon counsel listed below on the date indicated below by E-Mail.

Cheryl M. Nicolson, Esquire
Melissa L. Yemma, Esquire
Nicolson Law Group
Rose Tree Corporate Center II
1400 North Providence Road, Suite 6035
Media, PA 19063

**de LUCA LEVINE, LLC**

BY: *Patrick A. Hughes*

RAYMOND E. MACK, ESQUIRE
P.A. ID No. 91815 rmack@delucalevine.com
PATRICK A. HUGHES, ESQUIRE
P.A. ID No. 91415 phughes@delucalevine.com
Three Valley Square, Suite 220
Blue Bell, PA 19422
215-383-0081 (Main) / 215-383-0082 (fax)
ATTORNEYS FOR PLAINTIFFS

Date: January 23, 2019